EDWARD DON COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Bart J. Amato, Appellee).

First District (Industrial Commission Division)   No. 1—02—2404WC

Opinion filed November 12, 2003.—Rehearing denied December 29, 2003.

Fraterrigo, Beranek, Feiereisel & Kasbohm, of Chicago, for appellant.

Jack E. Gilhooly, Jr., of Krol, Bongiorno, Given & Murray, Ltd., of Chicago, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Edward Don Company (Edward Don) appeals from a circuit court order confirming a decision in which the Industrial Commission (Commission) awarded the claimant, Bart J. Amato, benefits in connection with his application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)). For the

following reasons, we affirm the circuit court's order in part and reverse it in part, set aside the Commission's decision in part, and remand this matter to the Commission with instructions.

The claimant filed an application for adjustment of claim seeking benefits for injuries he allegedly received on January 31, 1996, while in the employ of Edward Don. Prior to the commencement of the arbitration hearing on November 28, 2000, counsel for Edward Don informed the arbitrator of the following facts. The matter had previously been set for a hearing on November 1, 2000. On that date, Edward Don requested a continuance because a witness it had subpoenaed, Luis Ramirez, did not appear. The matter was continued to November 28, 2000. Counsel further informed the arbitrator that the process server Edward Don engaged had, on four occasions, attempted to serve Ramirez with a subpoena to appear on November 28 but that these attempts had been unsuccessful. Counsel then requested a continuance for the purpose of securing Ramirez's presence, stating:

> "I don't want to continue the trial with the [claimant] being here and Mr. Given [claimant's counsel] being prepared, but we would like to have either an opportunity to serve Mr. Ramirez or an order from you indicating that he must appear at a later date."

The claimant's counsel objected to the request for a continuance, stating that, when the arbitrator granted a continuance from November 1 to November 28, he stated that the latter was "a final date." The arbitrator denied Edward Don's motion for a continuance, and the hearing commenced.

The following facts are taken from the testimony, depositions, and records admitted into evidence during the arbitration hearing.

The claimant testified that, in January 1996, he was employed by Edward Don as a delivery truck driver. On January 31, 1996, the claimant made a delivery to St. Mary of Nazareth Hospital. According to the claimant, it was snowing on that date and "there was ice all around." The claimant stated that, as he was unloading cartons from the back of his truck, he slipped and fell on some ice on the step of his truck. His arm was "just a little bruised" and his right foot was injured. The claimant testified that he telephoned Edward Don to report the injury and was given permission to receive treatment at the hospital. He then went to the emergency room.

According to the emergency room records from St. Mary of Nazareth Hospital, the claimant reported having twisted his right foot and ankle on the tailgate of his delivery truck. The report of an X ray taken of the claimant's right foot states that no evidence of a fracture or dislocation was revealed. The claimant was diagnosed with a "contusion/sprain" of the right foot. He was treated with ice packs

and Motrin and an Ace bandage was applied to his right foot. The claimant was discharged from the emergency room with crutches and instructed to engage in no weight bearing on the right foot, to take Motrin for pain, and to follow up with Dr. Farahvar.

The claimant first saw Dr. Farahvar on February 15, 1996. According to Dr. Farahvar's report of that visit, his physical examination of the claimant revealed swelling, "echymosis" of the right foot with tenderness of the heel and lateral foot, and decreased range of motion with pain. Dr. Farahvar's report further states that the X ray taken at the emergency room on January 31, 1996, showed a "questionable avulsion fracture of calcaneus at Achilles tendon attachment" but that the X ray "had poor view." Dr. Farahvar ordered an X ray of the claimant's right foot, which was performed that day. The radiologist's report of that X ray states that no fracture or dislocation was seen but notes the presence of degenerative spurs at the first metatarsalphalangeal joint, an Achilles tendon spur, and calcification in the Achilles tendon. Dr. Farahvar's report, however, states that the February 15 X ray showed an avulsion fracture of the lateral cuboid and an old avulsion of the Achilles tendon. Dr. Farahvar applied an air cast and advised the claimant to use crutches. He further advised the claimant "to do a light duty work sitting job only and no driving" and to return in two weeks.

The claimant next saw Dr. Farahvar on February 29, 1996, at which time the doctor again ordered an X ray of his right foot. The X-ray report states that there is no evidence of a fracture or dislocation. In his report of the February 29 visit, Dr. Farahvar stated that the X ray showed the claimant's fracture was healing well. On physical examination, the doctor found slight swelling of the claimant's right foot, minimal tenderness, and increasing range of motion. Dr. Farahvar instructed the claimant to continue wearing the air cast and to continue "with [a] sitting job, if available," restricting him to "no driving."

On February 29, 1996, the claimant was examined by Dr. Arthur Broder at the request of Edward Don. In a letter dated March 6, 1996, and addressed to Edward Don's insurance carrier, Dr. Broder reported that his examination of the claimant revealed the absence of discoloration or swelling of the right foot and a full range of motion. Dr. Broder noted that the radiology report of X rays of the claimant's right foot performed on February 15, 1996, indicated there was no fracture or dislocation seen. He further noted that, in his report of the claimant's February 29, 1996, visit, Dr. Farahvar stated that X rays of that date showed the claimant's fracture was healing well. Dr. Broder stated that the February 29 X rays were not available to him and "would be

in controversy to the radiologist's report of 2/15/96." Dr. Broder concluded that it was "questionable" as to whether the claimant had sustained a fracture of his right foot. He opined, however, that the claimant could return to work "in a modified capacity immediately" and could return to full-duty work "on or about" March 29, 1996.

The claimant next saw Dr. Farahvar on March 28, 1996. Dr. Farahvar instructed the claimant to continue with light-duty work, but released the claimant to return to his regular work duties on April 7, 1996. In his March 28, 1996, report to Edward Don, Dr. Farahvar referred to Dr. Broder's report and stated: "I suggest you obtain copies of the X-ray films rather than relaying [sic] on the radiologist reports which in my proffesional [sic] opinion are not accurate."

The claimant testified that he returned to work, performing light-duty work, on March 17, 1996. Edward Don assigned him full-duty work as of March 29, 1996.

The claimant saw Dr. Farahvar on May 16, 1996, on which date the doctor ordered that the claimant could return to his regular work duties but was to work no more than eight hours per day.

At Edward Don's request, the claimant also saw Dr. Broder on May 16, 1996. Dr. Broder ordered a bone scan of the claimant's ankle. The bone scan was performed on May 17 and revealed "focally increased activity in the right foot grossly at the level of the cuboid bone."

On June 6, 1996, Dr. William Hejna examined the claimant at the request of Dr. Broder. In a letter of that same date addressed to Dr. Broder, Dr. Hejna noted that he had "limited medical records available for review and no radiologic studies for interpretation." Dr. Hejna opined that the claimant had sustained an avulsion fracture of the cuboid bone. He further opined that the claimant could continue to work as a truck driver/delivery person performing his pre-injury duties, which included 10-hour work days. Dr. Hejna stated that he anticipated that, over time, the claimant's foot would "return to full normal function."

The claimant saw Dr. Farahvar on July 11, 1996. On that date, Dr. Farahvar ordered that the claimant could return to work with no restrictions as of July 12, 1996.

The claimant testified that, prior to this accident, he had never sustained an injury to or had any treatment of his right ankle or foot. According to the claimant, as of the date of the arbitration hearing, he was experiencing swelling of his right foot upon standing for longer than an hour or driving for longer than two and one half hours. He was also experiencing some pain in his foot and taking Motrin for the pain when it became "real bad."

On cross-examination, the claimant testified that, about 35 minutes after his accident, he had a conversation with Manuel Bruno, a receiving clerk at St. Mary of Nazareth Hospital. According to the claimant, he told Bruno that he wanted treatment. The claimant testified that he could not recall if Bruno asked him why he was limping. He denied telling Bruno that he had twisted his ankle at his last delivery stop. The claimant further testified that Luis Ramirez was not present during his conversation with Bruno. Rather, Ramirez was in a different room when the conversation took place. According to the claimant, neither Bruno nor Ramirez witnessed the accident.

Also on cross-examination, the claimant acknowledged that he had filed a civil action against St. Mary of Nazareth Hospital in connection with his injury. When Edward Don's counsel asked the claimant if that action had been dismissed for want of prosecution, the claimant's counsel objected, arguing that the civil lawsuit had no bearing on the workers' compensation proceedings. The arbitrator asked Edward Don's counsel where he was "going with this," to which counsel responded that he intended to "ask [the claimant] what he said" during an arbitration hearing conducted in connection with the civil suit. The arbitrator sustained the objection by the claimant's counsel.

Counsel for Edward Don attempted to submit into evidence an unsigned, typewritten report, entitled "Supplementary Report of Investigation," which is dated October 28, 1996, and purports to have been authored by Allen Mittleman. According to the report, the author interviewed Luis Ramirez on October 22, 1996, at which time Ramirez stated that, while at work at St. Mary of Nazareth Hospital on January 31, 1996, he heard his coworker, Manuel Bruno, speaking to a delivery truck driver who was wearing an Edward Don uniform. Bruno asked the driver why he was limping, and the driver responded that he had injured his leg at his last delivery stop prior to the hospital. The arbitrator did not allow the report into evidence.

At the conclusion of the hearing, the arbitrator issued a decision in which he found that, on January 31, 1996, the claimant had sustained accidental injuries arising out of and in the course of his employment. The arbitrator awarded the claimant: temporary total disability (TTD) benefits for a period of $6^{4}/_{7}$ weeks, representing the period from February 1 through March 17, 1996; permanent partial disability (PPD) benefits pursuant to section 8(e) of the Act (820 ILCS 305/8(e) (West 2000)) for the loss of the use of his right foot to the extent of 25%; and $499.40 in reasonable and necessary medical expenses.

Edward Don sought a review of the arbitrator's decision before the Commission. The Commission, with one commissioner dissenting,

affirmed and adopted the arbitrator's decision. The dissenting commissioner believed the arbitrator's decision should be reversed and the matter remanded for a new hearing because Edward Don was denied a fair hearing as a result of the arbitrator's rulings: (1) denying Edward Don's request for a continuance and an order enforcing a subpoena issued to Luis Ramirez; and (2) sustaining the objection of the claimant's counsel to questioning as to the content of the claimant's testimony during an arbitration hearing held in the claimant's civil suit against St. Mary of Nazareth Hospital.

Edward Don filed an action for judicial review in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and Edward Don instituted this appeal.

On appeal, Edward Don first contends that the decision of the arbitrator and the Commission to deny it a continuance for the purpose of securing Ramirez's presence was an abuse of discretion and contrary to law.

■ The granting or denial of a motion for a continuance lies within the sound discretion of the arbitrator or Commission, whose decision will not be reversed absent an abuse of that discretion. *South Chicago Community Hospital v. Industrial Comm'n*, 44 Ill. 2d 119, 123, 254 N.E.2d 448 (1969); *LeFebvre v. Industrial Comm'n*, 276 Ill. App. 3d 791, 795, 659 N.E.2d 1 (1995).

■ Here, the claimant's application for adjustment of claim had been pending for over four years when, on November 28, 2000, Edward Don requested a continuance. The arbitrator denied the request, and the Commission, in its decision affirming and adopting the arbitrator's decision, found that the arbitrator did not err in denying the motion for a continuance. Initially, we note that the dissenting commissioner stated as follows:

> "[Edward Don] served a subpoena for a witness, Ramirez, who did not appear. [Edward Don] asked the Arbitrator to enforce the subpoena and continue the case until the witness appeared. This request was made before the hearing began. The Arbitrator refused."

Subsequently, the dissenting commissioner concluded that the arbitrator's ruling violated section 7030.50(d) of the Commission's rules (50 Ill. Adm. Code § 7030.50(d) (2003)) in that the arbitrator refused to even consider Edward Don's request for enforcement of a subpoena. We disagree. First, although Edward Don served a subpoena on Ramirez requiring him to appear on November 1, 2000, its attempts to serve a subpoena requiring his appearance on November 28, 2000, were unsuccessful. Further, it does not appear that Edward Don's counsel ever asked the arbitrator to enforce the November 1,

2000, subpoena, but rather asked for a continuance, stating "we would like to have either an opportunity to serve Mr. Ramirez or an order from you indicating that he must appear at a later date." Finally, even if this could be taken as a request for an order enforcing the November 1, 2000, subpoena, the request was not in the proper form. As section 16 of the Act provides, only the circuit court, upon application of an arbitrator, can enforce a subpoena issued by the arbitrator. 820 ILCS 305/16 (West 2002). Pursuant to section 7030.50 of the Commission's rules, the party seeking enforcement of a subpoena issued by an arbitrator must prepare an application to the circuit court of the county in which the claim is pending requesting enforcement of the subpoena pursuant to section 16 of the Act and file the application with the arbitrator, who will hold a hearing on the enforcement of the application. If the arbitrator signs the application, the party seeking enforcement of the subpoena may then file the application in the circuit court. 50 Ill. Adm. Code § 7030.50(d) (2003). Edward Don never followed the procedures necessary to seek enforcement of the subpoena served on Ramirez requiring his appearance on November 1, 2000. Thus, we cannot agree with the dissenting commissioner's conclusion that the arbitrator violated section 7030.50(d).

Here, the Commission, in its decision affirming and adopting the arbitrator's decision, noted that Edward Don sought, and was granted, three continuances prior to November 1, 2000. On November 1, Edward Don again sought, and was granted, a continuance. On appeal, Edward Don points out that the counsel who sought the November 1 and November 28 continuances did not file his appearance on its behalf until October 31, 2000. This does not change the fact that Edward Don was granted four continuances. Under the circumstances, we agree with the Commission that the arbitrator did not abuse his discretion in denying Edward Don's November 28, 2000, motion for a continuance.

Edward Don next argues that the arbitrator erred in preventing its counsel from questioning the claimant regarding his testimony at an arbitration hearing conducted in connection with a civil lawsuit. As stated above, on cross-examination, the claimant acknowledged that he had filed a civil suit against St. Mary of Nazareth Hospital in connection with the injuries he sustained from his fall on January 31, 1996. When Edward Don's counsel indicated his intention to question the claimant regarding statements he made at an arbitration hearing conducted in connection with that suit, the claimant's counsel objected, asserting that the arbitration hearing was nonbinding, that it was conducted before a paralegal, that the claimant was not under oath at the hearing, and that the claimant was not represented by

counsel at the hearing. Counsel for Edward Don indicated that it was his understanding that the arbitration hearing was nonbinding and that there had not been a court reporter present. He further stated that he had not been aware that the hearing had been conducted before a paralegal but that he was "not going to question that." The arbitrator refused to allow the questioning. In its decision affirming and adopting the arbitrator's decision, the Commission stated as follows:

> "As it relates to whether the Arbitrator should have allowed [the claimant] to be questioned regarding alleged prior inconsistent statements, the Commission finds the Arbitrator should have permitted such questioning. However, [Edward Don] was fully aware [the claimant] was claiming that he was injured at St. Mary of Nazareth Hospital while making a delivery. *** If [the claimant] made contrary statements that were witnessed by others, [Edward Don] should have had those people present to testify."

■ The credibility of a witness may be tested by showing that, at a prior time, he made a statement which is inconsistent with his trial testimony on a material matter. *Sommese v. Maling Brothers, Inc.*, 36 Ill. 2d 263, 268-69, 222 N.E.2d 468 (1966); *Kotvan v. Kirk*, 321 Ill. App. 3d 733, 748, 747 N.E.2d 1045 (2001). This is true even if the prior inconsistent statement was not made under oath or in a court proceeding. *LaSalle National Bank v. 53rd-Ellis Currency Exchange, Inc.*, 249 Ill. App. 3d 415, 434, 618 N.E.2d 1103 (1993). If, upon questioning, the witness denies having made the prior inconsistent statement or gives equivocal answers to questions regarding the prior statement, the impeachment must be completed by later offering evidence of the inconsistent statement. *Morris v. Milby*, 301 Ill. App. 3d 224, 231, 703 N.E.2d 121 (1998). While evidence of a witness's prior inconsistent statement may be used to impeach the witness's credibility, the statement is not admissible as substantive evidence. *McCoy v. Board of Fire & Police Commissioners of the Village of Hanover Park*, 54 Ill. App. 3d 276, 281, 369 N.E.2d 278 (1977); but see 725 ILCS 5/115—10.1 (West 2002) (setting forth circumstances under which the prior inconsistent statement of a witness in a criminal proceeding is admissible as substantive evidence). The scope and extent of cross-examination are within the discretion of the arbitrator. *Johns-Manville Products Corp. v. Industrial Comm'n*, 78 Ill. 2d 171, 181, 399 N.E.2d 606 (1979).

■ In the instant case, when the claimant's counsel objected to any questions regarding the claimant's civil lawsuit against St. Mary of Nazareth Hospital, the arbitrator asked counsel for Edward Don where he was "going with this." Counsel responded that he was "go-

ing to ask [the claimant] what he said during" the arbitration hearing conducted in connection with the civil litigation. Counsel, however, did not make an offer of proof as to what questions he intended to ask the claimant and what responses he expected the claimant to give. Generally, a party who fails to make an offer of proof as to the evidence it intended to introduce waives any claim that the evidence was improperly excluded. *Phillips Getschow Co. v. Industrial Comm'n*, 172 Ill. App. 3d 769, 774, 527 N.E.2d 114 (1988); *Carter v. Azaran*, 332 Ill. App. 3d 948, 956, 774 N.E.2d 400 (2002). Although an offer of proof would not have been required if the attitude of the arbitrator prevented Edward Don from making one or if it was apparent from the record that the arbitrator understood the nature of the testimony sought to be elicited (*Carter*, 332 Ill. App. 3d at 956), we cannot say that such is the case here. Counsel for Edward Don stated only that he wished to ask the claimant what he said at the arbitration hearing. He did not specify what particular questions he wished to ask the claimant or demonstrate that the claimant's anticipated answers to those questions would be inconsistent as to a material issue with his testimony in these proceedings. Accordingly, we find that Edward Don has waived review of the issue. We further note that Edward Don did not demonstrate the ability to prove up any impeachment should the claimant deny making specific statements at the arbitration hearing in the civil action. Counsel represented to the arbitrator that there was no court reporter present at the arbitration hearing in the civil action. As such, there was clearly no transcript with which counsel could prove up any impeachment. Edward Don asserts that it could have proved up the impeachment with the testimony of the arbitrator before whom the prior testimony was given or some other witness who was present and heard the prior testimony. At the time that counsel for Edward Don sought to question the claimant, however, it did not appear that he was prepared to prove up any impeachment in such a manner. Rather, it appeared that counsel was not even aware of the identity of the arbitrator. When the claimant's counsel stated that the arbitration hearing had been conducted before a paralegal, counsel for Edward Don stated that he had not been aware of that fact but that he was "not going to question that." Waiver aside, under these circumstances, we cannot say that the arbitrator abused his discretion in refusing to allow Edward Don to question the claimant regarding his prior statements.

Edward Don next asserts that the Commission's finding that the claimant sustained accidental injuries arising out of and in the course of his employment on January 31, 1996, is against the manifest weight of the evidence.

■ In a workers' compensation case, the claimant has the burden of establishing, by a preponderance of the evidence, that his injury arose out of and in the course of his employment. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980). It is the function of the Commission to decide questions of fact, judge the credibility of witnesses, and resolve conflicting evidence. *O'Dette*, 79 Ill. 2d at 253. The Commission's determination on a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

■ Edward Don asserts that the Commission's finding that the claimant sustained injuries arising out of and in the course of his employment is against the manifest weight of the evidence. In support of this assertion, Edward Don notes that the Commission's finding that the claimant injured himself while making a delivery at St. Mary of Nazareth Hospital on January 31, 1996, was based on the claimant's unrebutted testimony to this effect. It asserts, however, that "the only reason [the claimant's] testimony was 'unrebutted' was because of the arbitrator's error in failing to grant [Edward Don] a short continuance to present" Ramirez's testimony. We have already concluded, however, that the arbitrator's denial of Edward Don's motion for a continuance did not constitute an abuse of discretion. The claimant's testimony at the arbitration hearing is sufficient to support the Commission's finding that he sustained accidental injuries in the employ of Edward Don on January 31, 1996. Accordingly, we reject Edward Don's contention in this regard.

■ Edward Don also asserts on appeal that the Commission's findings that the claimant's current condition of ill-being is causally connected to his January 31, 1996, work-related accident and that the claimant is entitled to TTD benefits for a period of 6 4/7 weeks, PPD benefits for the loss of the use of his right foot to the extent of 25%, and medical expenses in the amount of $499.40 are all against the manifest weight of the evidence. Edward Don premises each of these arguments solely upon its earlier contention that the claimant failed to establish he sustained a compensable accident on January 31, 1996. We have already rejected this contention and, for this reason, each of the employer's assertions based upon this contention necessarily fail as well.

Finally, we turn to Edward Don's argument that the Commission's finding that the claimant's average weekly wage is $579.46 is against

the manifest weight of the evidence. It contends that the Commission improperly included the claimant's overtime wages when computing his average weekly wage. We agree.

■ Section 10 of the Act provides that compensation under section 8 of the Act, which governs TTD and PPD benefits, shall be computed on the basis of average weekly wage, which is defined in relevant part as:

> "the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52; but if the injured employee lost 5 or more calendar days during such period, whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed." 820 ILCS 305/10 (West 2002).

The claimant in a workers' compensation proceeding has the burden of establishing his average weekly wage. *Cook v. Industrial Comm'n*, 231 Ill. App. 3d 729, 731, 596 N.E.2d 746 (1992). The determination of a claimant's average weekly wage is a question of fact, and the Commission's determination will not be disturbed unless it is contrary to the manifest weight of the evidence. *Ogle v. Industrial Comm'n*, 284 Ill. App. 3d 1093, 1096, 673 N.E.2d 706 (1996).

Here, the claimant introduced into evidence a wage summary sheet which demonstrated that he had only worked for Edward Don during the 16 weeks immediately preceding his accident. The wage summary sheet further showed that, during those 16 weeks, the claimant worked a total of 624 "regular hours," varying from 28 to 48 hours of regular time per week, for which he earned a total of $8,237.40. This reflects a "regular" rate of pay of $13.20 per hour. The wage summary sheet also reflects that, during the 16-week period preceding the claimant's accident, he worked a total of 77 hours of overtime, varying from 0 to 7.8 hours per week, for a total of $1,550.83 of overtime pay. This reflects a rate of $20.14 for overtime work. In calculating the claimant's average weekly wage, the arbitrator included the 77 hours of overtime the claimant worked, and multiplied that number by the claimant's regular rate of pay rather than his overtime rate of pay. The arbitrator found that the claimant had total regular earnings of

$9,271.29 ($8,237.40 for regular hours worked + $1,033.89 for overtime hours worked calculated at the claimant's regular rate of pay). Dividing this figure by 16 weeks, the arbitrator concluded that the claimant's average weekly wage is $579.46. The Commission affirmed and adopted the arbitrator's finding in this regard.

Edward Don contends that the Commission erred in including the claimant's overtime hours in calculating the average weekly wage. Section 10 of the Act explicitly states that overtime shall be excluded in making the calculation. 820 ILCS 305/10 (West 2002); *Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n*, 180 Ill. App. 3d 885, 536 N.E.2d 1008 (1989) (average weekly wage properly calculated excluding overtime pay). Relying on *Edward Hines Lumber Co. v. Industrial Comm'n*, 215 Ill. App. 3d 659, 575 N.E.2d 1234 (1990), the claimant asserts that the arbitrator properly included his overtime hours, multiplying them by his regular rate of pay, in calculating his average weekly wage. We find the claimant's reliance on *Edward Hines Lumber Co.* to be misplaced.

In *Edward Hines Lumber Co.*, the claimant presented evidence that the contract between his union and his employer provided that he had to work whatever number of hours the employer demanded of him and that his employer required its employees to work a minimum number of about 60 hours per week. If an employee refused to work the required number of hours, the employer could fire him. Under the contract, the claimant was paid at a regular rate of pay for the first 40 hours per week he worked and at an overtime rate for any additional hours. *Edward Hines Lumber Co.*, 215 Ill. App. 3d at 662. In calculating the claimant's average weekly wage, the Commission determined that the claimant normally worked a 60-hour work week and calculated the average wage by multiplying 60 hours by the claimant's regular rate of pay. The employer appealed, arguing that the Commission had erred in including overtime hours in calculating the average weekly wage in violation of section 10 of the Act. This court rejected the argument. We held that "overtime" as used in section 10 of the Act does not simply mean any time over 8 hours per day or 40 hours per week. Rather, recognizing that "different occupations have different regular hours of employment," we concluded that "overtime" as used in section 10 means "(1) compensation for any hours beyond those the claimant regularly works each week, and (2) extra hourly pay above the claimant's normal hourly wage." *Edward Hines Lumber Co.*, 215 Ill. App. 3d at 666. As there was evidence that the claimant was regularly required to work overtime and had actually worked at least 60 hours per week, we concluded that the Commission did not err in including the claimant's overtime hours at his regular rate of

pay in calculating the average weekly wage. *Edward Hines Lumber Co.*, 215 Ill. App. 3d at 666-67. See also *Ogle v. Industrial Comm'n*, 284 Ill. App. 3d 1093, 673 N.E.2d 706 (1996) (Commission did not err in including claimant's overtime hours at regular rate of pay in calculating average weekly wage; although claimant was paid overtime for anything over 40 hours per week, there was evidence that he was regularly scheduled and required to work 48 hours).

■ In the instant case, unlike in *Edward Hines Lumber Co.*, the claimant presented no evidence establishing the number of hours that he was required to work. Although the wage summary sheet reflects that in 15 out of the 16 weeks that the claimant worked for Edward Don, he worked some amount of overtime, there is no evidence that he was required to work overtime as a condition of his employment or that he consistently worked a set number of overtime hours each week. There is no evidence that the overtime hours the claimant worked were part of his regular hours of employment. As a consequence, we find that the Commission erred in including the claimant's overtime hours at his regular rate of pay in calculating his average weekly wage. Accordingly, we must reverse that portion of the circuit court's order confirming the Commission's computation of the claimant's average weekly wage, and its corresponding computations as to the amount of the claimant's TTD and PPD benefits, set aside that portion of the Commission's decision containing these computations, and remand this cause to the Commission with instructions to recalculate the claimant's average weekly wage and, based thereon, the amount of the claimant's TTD and PPD benefit payments.

Circuit court order affirmed in part and reversed in part; Commission's decision set aside in part, and cause remanded to the Commission with instructions.

McCULLOUGH, P.J., and CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.