FREESEN, INC., Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Jay Dodd, Appellee and Cross-Appellant).

Fourth District (Industrial Commission Division)    No. 4—03—0565WC

Argued May 26, 2004.—Opinion filed June 9, 2004.

L. Robert Mueller (argued), of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

Michael J. Logan (argued), of Michael J. Logan, Ltd., of Springfield, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On March 27, 1992, claimant filed an application seeking benefits for injuries from employer, Freesen, Inc., pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1992)). On June 20, 2001, an arbitrator concluded that claimant had suffered compensable injuries on November 21, 1991, arising out of and in the course of employment with employer. The arbitrator also found that claimant's seizures, which began on December 2, 1996, were not compensable injuries as they were not causally related to the November 21, 1991, accident. The arbitrator awarded claimant 491 weeks of temporary total disability (TTD) benefits at a rate of $314.92 per week, permanent total disability (PTD) benefits of $314.92 per week for life, and "all medical services" except those related to claimant's seizures.

On June 11, 2002, the Industrial Commission (Commission) reversed the arbitrator's decision on the issue of causation between the accident and claimant's seizures, finding that a causal connection did exist. It modified the TTD benefit award to a period of 424⁶/₇ weeks at a rate of $478.17 per week and the PTD benefit award to a rate of $478.17 per week for life. The Commission also modified the nonspecific medical-expense award to $84,646.85 and otherwise affirmed the arbitrator's decision.

On July 5, 2002, employer filed an action in the circuit court of Sangamon County, seeking administrative review of the Commission's decision. On October 9, 2002, the court confirmed the finding of a causal relationship between the seizures and the accident. However, the court found no evidence to support the Commission's average

weekly wage calculation, on which the awards of TTD and PTD benefits were based. The court remanded the case to the Commission to explain or document its calculation.

On February 4, 2003, the Commission issued a new decision in response to the circuit court's order. On February 28, 2003, employer again filed for administrative review in the circuit court. The court modified the Commission's decision to reflect that the TTD and PTD benefit rates should be $608.41 and $405.81 per week, respectively. On appeal, employer argues that (1) claimant's seizures were not causally related to the November 21, 1991, accident and (2) the average weekly wage calculations by the Commission and the circuit court were improper. On cross-appeal, claimant argues that the court erred in calculating the average weekly wage. We affirm.

Claimant, 42 years old on the date of injury, testified that on November 21, 1991, he was working for employer as a labor foreman at a work site assisting in the demolition of a bridge across the Sangamon River. The temperature was about 20 degrees. Claimant climbed up on one girder and walked out on to an X-brace and was straddling the X-brace when the structure fell down to the river with claimant still on it. On impact, claimant felt his right side hit. He was initially pinned underwater under the girder but was eventually able to free himself. He rose to the surface but went back underwater two or three more times. Other workers pulled him from the water.

Claimant was taken to the emergency room of Memorial Hospital in Springfield. He was diagnosed with a fracture at the L1 vertebrae, total loss of use of his bladder and bowels, and impotence. He was later diagnosed with macular degeneration in his right eye and severe posttraumatic headaches. Three to four days after claimant was admitted to the hospital, he began to see bright flashes of light in his right eye. Prior to the accident, claimant had no eye problems except that he required eyeglasses.

Shortly before August 6, 1996, claimant began having episodes of dizziness. He began to experience a funny taste in his mouth. On December 6, 1996, at about 5 a.m., claimant had a grand mal seizure. An electroencephalogram (EEG), a computed tomography (CT) scan, and a magnetic resonance imaging (MRI) were all negative. In April 1997, claimant had another seizure, which fractured two or three vertebrae. Since that time, claimant has suffered moderate to severe pain between his shoulders in the mid-thoracic area. Following the April 1997 seizure, an EEG gave indications of clinical epilepsy. Claimant has not worked since the date of the accident.

The parties are aware of the medical evidence presented and it will not be reviewed in detail.

On December 4, 1996, claimant was admitted to the hospital for grand mal seizures, which are "very dramatic" seizures. Dr. Joseph Maurer stated that "it is quite possibly [sic] that he may have had an occult head injury at the time of his fall that only manifested itself later on." He was not aware of any indications suggesting claimant had any seizure disorder, history of infantile seizures, or other head injuries prior to the accident. From at least August 6, 1996, to the time of the seizure, claimant had been having dizzy spells and more frequent headaches, which were possible signs of a seizure diagnosis. On April 13, 1997, claimant was admitted to the hospital because of another seizure. Dr. Maurer was aware of no other reason other than the fall from the bridge that would have caused the seizures. He concluded that the seizures were a result of complications from the bridge accident. Dr. Maurer opined that, as of the date of his testimony, claimant had reached maximum medical improvement.

The arbitrator found a causal relationship between the accident and claimant's vision problem, bladder and bowel incontinence, bladder infection, headaches, impotence, and back injuries but not with the seizures. He awarded benefits as stated.

On June 11, 2002, the Commission found a causal connection between the accident and claimant's condition of ill-being as a result of his seizure based upon an unbroken chain of events, claimant's multiple headaches and episodes of dizziness, and Dr. Maurer's testimony as to causal connection. The Commission modified the arbitrator's decision as stated. The Commission's calculation of the average weekly wage included overtime earnings at the straight-wage rate because the wage records demonstrated that claimant regularly worked overtime. It found that in the 52 weeks prior to the accident, claimant worked 34.6 weeks. Citing section 10 of the Act, it arrived at the average weekly wage as follows: $22,996.59 + $1,820.33 (overtime) - $24,816.92/34.6 = $717.25. It concluded that the TTD/PTD rate was $478.17.

On July 5, 2002, employer filed an action for administrative review in the circuit court, which on October 9, 2002, concluded that the Commission's findings as to causal connection were not against the manifest weight of the evidence. As to the average weekly wage, the court found no evidence to support the average weekly wage calculation made by the Commission. It remanded the case to the Commission for the sole purpose of explaining or documenting the basis of such calculation.

On February 4, 2003, on remand, the Commission repeated that claimant worked 34.6 weeks of the 52-week period preceding the injury. The Commission stated that it included overtime because the wage

records demonstrated the claimant regularly worked overtime. It found claimant worked overtime in 23 of the 34.6 weeks worked. The Commission derived the average weekly wage as follows: $22,996.43 + $1,820.33 (overtime) = $24,816.76 (total earnings) / 34.6 (weeks) = $717.25 (average weekly wage).

On February 28, 2003, employer again filed for administrative review of the Commission's decision in the circuit court. The court noted that the Commission again failed to sufficiently explain the basis for its average weekly wage calculation. However, it noted that the parties had since stipulated that 38 weeks was the proper denominator to use for the relevant formula. The parties further agreed that claimant had earned $23,119.47 in regular wages for the 52 weeks prior to the injury and his overtime wages, calculated at the straight-time rate, were $1,816.51. The court concluded that overtime was not properly included in the average weekly wage calculation. Accordingly, it divided claimant's regular wages, $23,119.47, by 38 weeks to reach an average weekly wage of $608.41. It found that the TTD and PTD benefit rate would be $405.81. It otherwise confirmed the decision of the Commission. This appeal followed.

■ Employer first argues that claimant's seizures, which began on December 2, 1996, were not causally related to the November 21, 1991, accident. To recover compensation under the Act, a claimant must prove by a preponderance of the evidence that he has suffered a disabling injury that arose out of and in the course of his employment. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203, 797 N.E.2d 665, 671 (2003). Whether a causal connection exists between a claimant's injury and his employment is uniquely within the province of the Commission. *Wal-Mart Stores, Inc. v. Industrial Comm'n*, 326 Ill. App. 3d 438, 444, 761 N.E.2d 768, 773 (2001). On review, we consider whether the Commission's decision is against the manifest weight of the evidence. *Wal-Mart Stores, Inc.*, 326 Ill. App. 3d at 444, 761 N.E.2d at 773.

The Commission concluded that a causal connection existed between the accident and claimant's seizures based upon Dr. Maurer's testimony, an unbroken chain of events, and claimant's multiple headaches and episodes of dizziness. The testimony of Dr. Maurer supported a finding of causal relationship between complications from the accident and claimant's seizures. Dr. Maurer stated that an MRI was the best tool for diagnosing head injuries but one could not be performed on claimant when he was admitted to the hospital on the date of the accident because his back injury was the primary concern. An MRI could not be performed later because of the metal rods implanted in claimant's spine. In a discussion with claimant in the

year prior to deposition, claimant told Dr. Maurer that he was dazed when he initially impacted the water but did not remember much about the incident. Dr. Maurer opined that a loss of memory could suggest a possible head injury.

Employer did point to hospital records from the date of admission on November 21, 1991, where claimant denied any loss of consciousness and was able to remember most of the events of the accident. However, the records also show claimant was not able to recall whether he had been struck by an I beam while in the water. The Commission's finding that a causal connection existed between claimant's accident and his seizures is not against the manifest weight of the evidence.

■ Employer also contends that the average weekly wage calculations by the Commission and by the circuit court, predicated on *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 756 N.E.2d 822 (2001), create a windfall for the claimant where (1) the Commission's calculation of average weekly wage would result in claimant receiving "$24,864.84 in tax free payments for one year," and (2) an award of benefits at an increased rate dated back to the date of the accident on November 21, 1991, at the Commission rate or the circuit court's rate, would result in windfalls of over $80,000 and over $40,000, respectively. The claimant has the burden to establish his average weekly wage. *Edward Don Co. v. Industrial Comm'n*, 344 Ill. App. 3d 643, 655, 801 N.E.2d 18, 27 (2003). The determination of a claimant's average weekly wage is a question of fact for the Commission. On review, we will not disturb the Commission's determination unless it is against the manifest weight of the evidence. *Edward Don Co.*, 344 Ill. App. 3d at 655, 801 N.E.2d at 28. "[A]lthough concern over a windfall to the employee remains relevant in computing average weekly wage, it is not determinative." *Sylvester*, 197 Ill. 2d at 236, 756 N.E.2d at 829.

First, addressing whether claimant would receive a "$24,864.84 windfall" under the Commission's decision, such figure is only slightly higher than the $23,119.47 of claimant's "actual earnings" in the year prior to his injury. Compare *Sylvester*, 197 Ill. 2d at 235-36, 756 N.E.2d at 829 (claimant's receipt of an amount 32% more in TTD benefits than he would have earned as regular wages did not rise to the level of windfall), with *Hasler v. Industrial Comm'n*, 97 Ill. 2d 46, 52, 454 N.E.2d 307, 310 (1983) (finding claimant would receive a windfall by receiving an award almost six times greater than her income from the year prior to her injury). Employer's characterization of claimant's award as a "windfall" is unpersuasive. As to whether the tax-free nature of such payments creates a windfall effect, such may be the effect, but the legislature has made a conscious decision to exclude such

payments from a claimant's taxable income. It is within the province of the legislature to create such a statutory scheme.

Second, employer claims that the benefit award to claimant at an increased rate back to the date of accident on November 21, 1991, would result in a windfall of over $80,000 at the rate of the Commission and over $40,000 at the rate set by the circuit court, especially where employer was paying TTD benefits "at a correct rate for almost ten years." Employer provides no basis for these figures. Before the Commission, employer contended that the arbitrator's determination of the average weekly wage, $472.38 ($24,563.66 (regular earnings plus two-thirds of the overtime wages)/52 weeks), was correct. Here, citing *McCartney v. Industrial Comm'n*, 174 Ill. App. 3d 213, 529 N.E.2d 250 (1988), it argues that the amount it actually paid claimant, based on a $505.49 average weekly wage, was the correct amount. As to the rate voluntarily paid, the Commission is not bound as to the rate of TTD benefits paid to a claimant; rather, it is bound by statute.

While employer did stipulate to the figure of 38 weeks as a denominator in the average weekly wage formula, it expressly conditioned such stipulation to the extent that it believed *Sylvester* should not be given retroactive application. "Generally, when a court issues an opinion, the decision is presumed to apply both retroactively and prospectively." *American Airlines v. Industrial Comm'n*, 328 Ill. App. 3d 343, 346, 766 N.E.2d 1132, 1134 (2002), citing *Deichmueller Construction Co. v. Industrial Comm'n*, 151 Ill. 2d 413, 416, 603 N.E.2d 516, 518 (1992). This presumption can be overcome in two ways. First, the issuing court may expressly state in its decision that it is to be applied prospectively only. *American Airlines*, 328 Ill. App. 3d at 346, 766 N.E.2d at 1134. Second, a later court may under certain circumstances expressly decline to give the previous opinion retroactive effect, at least with respect to the parties appearing before the later court. *American Airlines*, 328 Ill. App. 3d at 346, 766 N.E.2d at 1134. The *Sylvester* decision makes no reference that it is to be given prospective application only.

Whether the second method of overriding the presumption is viable first depends upon whether *Sylvester* establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. *Elg v. Whittington*, 119 Ill. 2d 344, 357, 518 N.E.2d 1232, 1238 (1987).

Contrary to employer's assertion, *Sylvester* did not represent a change in the method of determining average weekly wage from *McCartney v. Industrial Comm'n*, 174 Ill. App. 3d 213, 529 N.E.2d 250 (1988). First, *McCartney* does not state that the denominator in the

average weekly wage calculation is to be the number of weeks a claimant actually worked a portion thereof. Instead, the court in *McCartney* rejected the Commission's attempt to use 52 weeks as a denominator where the claimant had only worked 509 hours in the 12 months preceding his injury. *McCartney*, 174 Ill. App. 3d at 215, 529 N.E.2d at 252. The court cited language from section 10 of the Act that the figure should be "the number of weeks actually worked." *McCartney*, 174 Ill. App. 3d at 215, 529 N.E.2d at 251.

As *Sylvester* notes, it was not a change to then-existing methods of calculating the average weekly wage. *Sylvester*, 197 Ill. 2d at 233-34, 756 N.E.2d at 828, citing *Peoria Roofing & Sheet Metal Co. v. Industrial Comm'n*, 181 Ill. App. 3d 616, 537 N.E.2d 381 (1989) (and other cases). Nor is *McCartney* inconsistent with *Sylvester*, in that it merely refers to the statutory language as to the "number of weeks actually worked" but never attempts to extract the meaning therefrom. See *McCartney*, 174 Ill. App. 3d at 215, 529 N.E.2d at 251. Because *Sylvester* neither explicitly gave retroactive effect nor established a new principle of law, employer has failed to show that *Sylvester* should not be applied retroactively in this case.

■ On cross-appeal, claimant argues that the circuit court erred in failing to include overtime wages in calculating his average weekly wage. In *Edward Don Co.*, the employer also argued that the Commission erred in including the claimant's overtime hours in calculating the average weekly wage. *Edward Don Co.*, 344 Ill. App. 3d at 656, 801 N.E.2d at 28. Relying on *Edward Hines Lumber Co. v. Industrial Comm'n*, 215 Ill. App. 3d 659, 575 N.E.2d 1234 (1990), the claimant asserted that overtime hours were properly included in calculating his average weekly wage. We rejected claimant's argument finding the *Edward Hines Lumber Co.* case to be distinguishable from the facts in that case where the claimant presented no evidence establishing the number of hours he was required to work.

Section 10 of the Act explicitly states that overtime is to be excluded in calculating the average weekly wage. 820 ILCS 305/10 (West 2000). Moreover, similar to the situation in *Edward Don Co.*, while claimant presented a wage summary sheet showing that he worked some overtime in 22 of the 45 weeks in which he worked at least in part, claimant can point to no evidence that (1) he was required to work overtime as a condition of his employment, (2) he consistently worked a set number of overtime hours each week, or (3) the overtime hours he worked were part of his regular hours of employment. *Edward Don Co.*, 344 Ill. App. 3d at 657, 801 N.E.2d at 29. Accordingly, the Commission erred in including claimant's overtime hours at his regular rate of pay in calculating his average weekly

wage. The circuit court properly excluded such wages in making a determination of claimant's average weekly wage.

Claimant also argues that the circuit court erred by determining that he worked 38 weeks of the previous year in calculating TTD benefits. The court, noting that the Commission failed to explain how it arrived at the figure of 34.6 weeks, stated, "In any event, the parties want a resolution of this matter, and based on the pertinent data, agree that this divisor should be 38 weeks. *** I will proceed using the numbers agreed to by the parties." While claimant stipulated to the figure of 38 weeks before the circuit court, he now attempts to raise the argument that the court should have used the Commission's figure of 34.6 weeks.

A fundamental part of the adversarial process is that a party forfeits his right to complain of an alleged error where to do so is inconsistent with the position he took in an earlier court proceeding. *McMath v. Katholi*, 191 Ill. 2d 251, 255, 730 N.E.2d 1, 3 (2000). A party may not complain of error that he induced the court to make or to which he consented. *McMath*, 191 Ill. 2d at 255, 730 N.E.2d at 3. Here, claimant conceded that 38 weeks was a proper figure for calculation of his average weekly wage. He affirmatively stated to the circuit court that "the applicable weeks would be *** 38 weeks." The court used the figure, as stipulated by the parties, in its calculations. Claimant was bound by the statement and forfeited any challenge to the propriety of the court's use of the figure in calculating TTD benefits.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

HOFFMAN, CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.