AIRBORNE EXPRESS, INC., Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Ron Bronke, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—06—1960WC

Opinion filed March 20, 2007.—Rehearing denied April 24, 2007.

Galliani, Doell & Cozzi, of Chicago (Robert J. Cozzi, of counsel), for appellant.

Cullen, Haskins, Nicholson & Menchetti, of Chicago (Charles G. Haskins, Jr., of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Airborne Express, Inc. (Airborne), appeals from an order of the circuit court of Cook County which confirmed a decision of the Illinois

Workers' Compensation Commission (Commission) awarding benefits to Ron Bronke (claimant) under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). For the reasons that follow, we reverse that portion of the circuit court's order which confirmed the Commission's calculation of the claimant's average weekly wage and the weekly temporary total disability (TTD) and maintenance benefits to which he is entitled.

The claimant filed three applications for adjustment of claim pursuant to the Act, seeking benefits for injuries he claimed to have received while in the employ of Airborne on March 13, 2000 (case No. 00 WC 55154), July 10, 2000 (case No. 00 WC 64343), and October 8, 2001 (case No. 01 WC 66111). Following a consolidated hearing held pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2000)), an arbitrator issued three decisions in which he found that the claimant suffered accidental injuries on March 13, 2000, July 10, 2000, and October 8, 2001, arising out of and in the course of his employment with Airborne. In his decision in case No. 00 WC 55154, the arbitrator awarded the claimant TTD benefits under the Act at the rate of $660.62/week for a period of $2^1/7$ weeks. In case No. 00 WC 64343, the arbitrator awarded the claimant TTD benefits at the rate of $660.62/week for a period of $28^1/7$ weeks. In case No. 01 WC 66111, the arbitrator awarded the claimant TTD benefits at the rate of $600.94/week for a period of $74^4/7$ weeks and maintenance benefits at the rate of $600.94/week for a period of 76 weeks. Additionally, the arbitrator ordered Airborne to pay $1,474.74 for medical services provided to the claimant. In computing the TTD and maintenance awards in case No. 01 WC 66111, the arbitrator declined to include overtime earnings in the calculation of the claimant's average weekly wage and fixed his average weekly wage at $901.41.

The claimant filed petitions before the Commission seeking reviews of all three of the arbitrator's decisions. The Commission declared that he had filed a "protective review" only in cases No. 00 WC 55154 and No. 00 WC 64343 and affirmed and adopted the arbitrator's decisions in both cases. Finding that the claimant's overtime earnings should have been included in the calculation of his average weekly wage in case No. 01 WC 66111, the Commission, with one commissioner dissenting, modified the arbitrator's decision to provide for an average weekly wage of $1,246.86 and set his TTD and maintenance awards at $843.24/week for $74^4/7$ weeks and 76 weeks, respectively. The Commission remanded the case back to the arbitrator for further proceedings pursuant to *Thomas v. Industrial Comm'n,* 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

Airborne sought a judicial review of the Commission's decision in

case No. 01 WC 66111 in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and this appeal followed.

Airborne does not dispute the fact that the claimant suffered an injury arising out of and in the course of his employment on October 8, 2001, nor does it contest the nature and extent of the claimant's injuries or his period of disability. Airborne only asserts as error the Commission's inclusion of overtime earnings in calculating the claimant's average weekly wage for purposes of determining the weekly benefits to which he is entitled for TTD and maintenance. Consequently, we will only present those facts necessary to an analysis of the issue.

The claimant began working for Airborne in 1994 as a driver/dock worker. His duties consisted of loading overnight packages onto a truck and then delivering the packages. According to the claimant, his regular eight-hour shift began at 7 a.m. and ended at 4 p.m., Monday through Friday. However, it was company policy that a driver was to finish his route and deliver all of the packages on his truck before returning to Airborne's facility, "no matter how long it takes." The claimant testified that he was not to bring back undelivered freight unless he had permission to do so from a supervisor or manager. Over and above completion of a driver's own route, overtime is available at Airborne on a seniority basis. However, the claimant testified that regulations prohibited a driver from working more than eight hours of overtime in one day and more than 20 hours of overtime in a week. The claimant acknowledged that he normally completed his route during his scheduled eight-hour shift. According to the claimant, there were occasions when he was forced to work overtime to "run a route," but he could not remember the dates. He admitted, however, that he worked most of the overtime in 2001 because he used his seniority and requested overtime from his supervisors.

Scott Meier, the union steward at Airborne, testified that overtime is necessary to fulfill Airborne's operational needs. He stated that, pursuant to the union contract, overtime is awarded to employees on a seniority basis. However, if the necessary overtime requirements of the company are not met, employees with the least amount of seniority are required to work overtime. He also acknowledged Airborne's policy that a driver could not return to the facility with undelivered freight without a supervisor's permission. Neil Messio, another union representative, also testified to Airborne's overtime policies.

Joseph Yates worked for Airborne as a station manager at various locations in the Chicago metropolitan area. In 2002, he became the district manager at the Schaumburg facility where the claimant worked. Yates testified that the claimant's seniority was sufficiently

high such that it was doubtful he was forced to work overtime in 2001. Yates was also not aware of any instance in 2001 when the claimant was forced to work overtime. Yates testified that the drivers who were forced to work overtime fell into the lower 20% to 25% on the seniority list; whereas, the claimant fell in the upper 30%. According to Yates, the overtime that the claimant worked in 2001 was voluntary overtime for which he bid based on seniority.

The record reflects that the claimant worked 32 weeks during the 52-week period prior to his injury on October 8, 2001. During that period, he was paid $25,142.40 for working his regular shift and $3,702.69 for vacation and holiday pay. The total of these sums is $28,845.09 or an average of $901.41/week. Additionally, the claimant worked 538.70 hours of overtime in that same 32-week period.

In fixing the claimant's average weekly wage at $1,246.86, the Commission noted that, for the 32-week period prior to his injury on October 8, 2001, the claimant worked 1,200 regular hours and 538.70 hours of overtime. The overtime was worked in 31 of the 32 weeks at issue. The Commission multiplied the claimant's overtime hours by his regular pay rate of $21.59/hour, added his regular earnings for that period of $28,845.09, and then divided the total, $40,475.62, by 32 to arrive at an average weekly wage of $1,246.86. Based upon an average weekly wage of $1,246.86, the Commission fixed the claimant's TTD and maintenance benefits at $843.24/week.

Airborne argues that the Commission erred in including the claimant's overtime earnings in calculating his average weekly wage and, as a result, erred in its computation of the weekly TTD and maintenance benefits to which the claimant is entitled. According to Airborne, the arbitrator in case No. 01 WC 66111 correctly calculated the weekly TTD and maintenance benefits to which the claimant is entitled, and his award should be reinstated. We agree.

■ Section 10 of the Act provides that the weekly benefits to which an injured employee is entitled for TTD and maintenance under section 8 of the Act shall be computed on the basis of his or her average weekly wage. 820 ILCS 305/10 (West 2000). The statute provides that "average weekly wage" means:

> "the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of his injury, illness, or disablement excluding overtime, and bonus divided by 52; but if the injured employee lost 5 or more calendar days during such period, whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts

thereof remaining after the time so lost has been deducted." 820 ILCS 305/10 (West 2000).

Section 10 of the Act explicitly states that overtime is to be excluded in calculating an employee's average weekly wage. However, the statute fails to define "overtime."

As in all cases of statutory construction, our function is to ascertain and give effect to the intent of the legislature. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 473, 837 N.E.2d 1 (2005). In determining legislative intent, we first look to the statutory language. Where the language of the statute is clear, we will give it effect as written. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 473-74. In interpreting a statute, we give undefined terms their ordinary meaning. *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 473-74.

■ Overtime is commonly defined as "working time in excess of a minimum total set for a given period." Webster's Third New International Dictionary 1611 (1981). This court's prior decisions involving an interpretation of the overtime exclusion in section 10 of the Act are consistent with this definition.

In *Edward Hines Lumber Co. v. Industrial Comm'n*, 215 Ill. App. 3d 659, 575 N.E.2d 1234 (1990), this court held that "overtime" consists of compensation for hours beyond those the employee regularly works each week and extra hourly pay above the employee's normal hourly wage. *Edward Hines Lumber Co.*, 215 Ill. App. 3d at 666. In that case, the evidence established that the claimant was required to work whatever hours the employer demanded and that the minimum number of hours he worked was 10 per day, 6 days per week. *Edward Hines Lumber Co.*, 215 Ill. App. 3d at 662-63. Finding that the claimant actually averaged 67 hours of work per week, we held that the calculation of the claimant's average weekly wage under section 10 of the Act should be based on his earnings for 67 hours per week. *Edward Hines Lumber Co.*, 215 Ill. App. 3d at 666-67.

In *Ogle v. Industrial Comm'n*, 284 Ill. App. 3d 1093, 673 N.E.2d 706 (1996), we held that the claimant's average weekly wage should have been based upon his earnings for a 48-hour workweek. *Ogle*, 284 Ill. App. 3d at 1097. Our holding was based upon evidence which established that the claimant's normal workweek consisted of 48 hours, his union contract made overtime work mandatory, and it was not until the claimant had worked 48 hours or more that he was not required to work any additional overtime. The evidence also established that the claimant was only able to work less than 48 hours per week at the employer's discretion. *Ogle*, 284 Ill. App. 3d at 1096.

In *Edward Don Co. v. Industrial Comm'n*, 344 Ill. App. 3d 643,

801 N.E.2d 18 (2003), this court concluded that the Commission erred in including the claimant's earnings for 77 hours of overtime when calculating his average weekly wage pursuant to section 10 of the Act. *Edward Don Co.*, 344 Ill. App. 3d at 657. Although the wage summary sheets introduced in evidence reflected that the claimant had worked some overtime in 15 of the 16 weeks prior to his injury, there was no evidence that he was "required to work overtime as a condition of his employment or that he consistently worked a set number of overtime hours each week." *Edward Don Co.*, 344 Ill. App. 3d at 657.

In *Freesen, Inc. v. Industrial Comm'n*, 348 Ill. App. 3d 1035, 811 N.E.2d 322 (2004), although the claimant presented evidence that he worked some overtime in 22 of the 45 weeks in which he worked prior to his accident, there was no evidence that (1) he was required to work overtime as a condition of his employment, (2) he consistently worked a set number of hours of overtime each week, or (3) the overtime hours he worked were part of his regular hours of employment. *Freesen, Inc.*, 348 Ill. App. 3d at 1042. We found, therefore, that the Commission had erred in including the claimant's overtime hours in calculating his average weekly wage. *Freesen, Inc.*, 348 Ill. App. 3d at 1042-43.

This court has been consistent in its interpretation of the overtime exclusion in section 10 of the Act. Overtime includes those hours in excess of an employee's regular weekly hours of employment that he or she is not required to work as a condition of his or her employment or which are not part of a set number of hours consistently worked each week.

In this case, the claimant testified that his regular workweek consisted of daily eight-hour shifts beginning at 7 a.m. and ending at 4 p.m., Monday through Friday. In the 32-week period prior to his injury, the claimant worked 1,200 hours during his regular shifts and 538.70 hours of overtime. The overtime was worked in 31 of the 32 weeks at issue. The uncontradicted evidence established that the claimant was not required to work the 538.70 hours of overtime as a condition of his employment. Rather, he used his seniority and requested to work overtime. In addition, the wage summary sheets which were admitted in evidence reflect that the claimant did not work any set number of hours in excess of his regular 40-hour workweek. The wage summary sheets reflect that the claimant worked an irregular number of overtime hours, ranging from only .8 of an hour of overtime in one week and as much as 28.43 hours of overtime in another week.

The determination of a claimant's average weekly wage for purposes of calculating TTD and maintenance benefits under section 8 of the Act is a question of fact. *Edward Don Co.*, 344 Ill. App. 3d at

655. The Commission's resolution of the question will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Ogle*, 284 Ill. App. 3d at 1096. Although we are reluctant to set aside the Commission's decision on a factual question, we will not hesitate to do so when the clearly evident, plain, and indisputable weight of the evidence compels an opposite conclusion. *Montgomery Elevator Co. v. Industrial Comm'n*, 244 Ill. App. 3d 563, 567, 613 N.E.2d 822 (1993).

The 538.70 hours of overtime which the Commission included in its calculation of the claimant's average weekly wage were not part of the claimant's regular hours of employment and they were not hours that the claimant was required to work as a condition of his employment. Although the claimant consistently worked overtime, he did not work a set number of overtime hours each week. The Commission correctly noted that Airborne's operational needs required overtime work by its drivers. However, the claimant's seniority ensured that he would not have been required to work overtime if he did not request to do so. These uncontradicted facts lead us to conclude that the Commission's calculation of the claimant's average weekly wage and its dependent calculations of the weekly TTD and maintenance benefits to which the claimant is entitled are against the manifest weight of the evidence.

■ Section 10 of the Act explicitly states that overtime is to be excluded in calculating a claimant's average weekly wage. No rule of construction authorizes this court to declare that the legislature did not mean what the plain language of section 10 imports. *Cardwell v. Rockford Memorial Hospital*, 136 Ill. 2d 271, 278, 555 N.E.2d 6 (1990). We are simply not at liberty, by forced or subtle construction, to alter the plain meaning of the words employed by the legislature. *People ex rel. Pauling v. Misevic*, 32 Ill. 2d 11, 15, 203 N.E.2d 393 (1964). If merely working overtime on a regular, voluntary basis were sufficient to include the overtime hours worked in the calculation of an employee's average weekly wage, the overtime exclusion in section 10 of the Act would be rendered meaningless.

The 538.70 hours of overtime which the claimant worked in the 32 weeks prior to his accident were overtime within the meaning of section 10 of the Act and should not have been included in the Commission's calculation of the claimant's average weekly wage. *Freesen, Inc.*, 348 Ill. App. 3d at 1042-43; *Edward Don Co.*, 344 Ill. App. 3d at 655-57. Consequently, we: (1) reverse that portion of the circuit court's order which confirmed the Commission's calculation of the claimant's average weekly wage and its dependent calculations of the weekly TTD and maintenance benefits to which the claimant is entitled and affirm the order in all other respects; (2) reverse the Commission's calculation of the claimant's average weekly wage in case No. 01 WC

66111 and its dependent calculations of the weekly TTD and maintenance benefits to which the claimant is entitled; and (3) remand this cause to the Commission with instructions to calculate the claimant's average weekly wage, excluding therefrom the 538.70 hours of overtime which the claimant worked in the 32 weeks prior to his accident, and based thereon recalculate the weekly TTD and maintenance benefits to which the claimant is entitled. Additionally, we remand this matter back to the Commission for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

Circuit court order affirmed in part and reversed in part; Commission's decision reversed in part; and the cause remanded to the Commission with instructions.

McCULLOUGH, P.J., and GROMETER, HOLDRIDGE, and DONOVAN, JJ., concur.