MING AUTO BODY/MING OF DECATUR, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Darrell Marmor, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—07—1125WC

Opinion filed November 18, 2008.

Winters, Featherstun, Gaumer, Postlewait, Stocks & Flynn, of Decatur (Daniel L. Gaumer, of counsel), for appellant.

Touhy & Touhy, Ltd., of Chicago (Timothy J. Touhy, of counsel), for appellee.

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Ming Auto Body/Ming of Decatur, Inc. (Ming Auto), appeals from an order of the circuit court of Cook County, confirming a decision of the Illinois Workers' Compensation Commission (Commission), which awarded the claimant, Darrell Marmor, benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2006)). The claimant has also filed a cross-appeal. For the reasons stated below, we affirm.

## BACKGROUND

The claimant filed an application for adjustment of claim pursuant to the Act, seeking benefits for injuries he alleged that he received on October 5, 1990, while in the employ of Ming Auto. Two arbitration hearings were conducted to resolve the issues raised in the claimant's application. In November 1995, a hearing was held pursuant to section 19(b) of the Act. Thereafter, a permanency hearing was conducted in November and December of 2002.

In order to resolve the issues raised on appeal, it is necessary to consider the evidence presented at both the section 19(b) hearing conducted in November 1995 and the permanency hearing conducted in November and December 2002. The following factual recitation is taken from the evidence presented at those hearings.

At the hearing pursuant to section 19(b), held in November 1995 before arbitrator Peter Akemann, the claimant testified that he was a 29-year-old mechanic and that he sustained a work-related injury to his back on Friday, October 5, 1990, while employed by Ming Auto.

The claimant stated that he was injured while doing heavy lifting in order to perform repairs on a car. He did not report the injury to his employer until the following Monday, and he sought medical treatment on Tuesday, October 9, 1990. In December 1991, the claimant underwent a spinal fusion, which was performed by Dr. Gunnar Andersson and included the insertion of rods.

Numerous witnesses testified at the hearing, and there was conflicting evidence as to whether the claimant injured his back while helping a neighbor repair a grain auger on Saturday, October 6, 1990, the day following his alleged work accident. There was also conflicting evidence as to whether the claimant had ever injured his back prior to October 5, 1990.

In their respective evidence depositions, two of the claimant's treating physicians, Dr. Gunnar Andersson and Dr. Francis Lagattuta, expressed their professional opinions that the claimant's lumbar disc was likely torn by heavy lifting at work on Friday, October 5, 1990, and that normal body movements would cause the nucleus pulposus to slowly extrude through the tear over time. Dr. Andersson performed a spinal fusion in December 1991 to cure the internal disc disruption. According to Dr. Andersson, the claimant was unable to perform physical tasks of his occupation as a result of his work-related accident. Dr. Andersson, found that the claimant had attained maximum medical improvement (MMI) on February 2, 1993, and he released the claimant to work at a medium level of exertion, meaning that he could occasionally lift a maximum of 75 pounds and could frequently lift 35 pounds.

Dr. Andersson further testified that he advised the claimant in June 1993 that he should undergo a second surgical procedure to remove the rods that had been inserted during his fusion surgery. According to Dr. Andersson, the rod-removal procedure is similar to the fusion surgery in that the muscles and tissues need to heal. The hospital stay for such surgery would typically be approximately three days. In addition, Dr. Andersson stated that the recuperation time for the rod-removal procedure was between 8 and 10 weeks, with four weeks of rest before commencing physical therapy and then four to six weeks of physical therapy. Finally, Dr. Andersson testified that, even assuming the claimant underwent the second surgery to remove the fusion hardware, he would not be able to progress beyond the ability to work at the medium level of exertion described above.

Dr. Lagattuta testified that the claimant suffered from a chronic lumbar sprain, an anular tear with herniation, and a postfusion laminectomy syndrome. Dr. Lagattuta specifically ruled out the possibility that the claimant's back injury resulted from his activity in

helping a neighbor move a grain auger on the day following his work accident. Dr. Lagattuta agreed that the claimant's "FCE" test indicated that he was able to perform work at a medium level of exertion, but he testified that the claimant had not reached MMI as of November 1995. According to Dr. Lagattuta, the claimant was suffering from chronic pain, caused by local irritation of his back, and was totally disabled from performing any work as of November 1995. Dr. Lagattuta recommended that the claimant undergo the second surgical procedure to remove the hardware that had been inserted during the 1991 spinal fusion. Dr. Lagattuta also stated that the claimant would require approximately six weeks of rehabilitation after undergoing this second surgery. In Dr. Lagattuta's opinion, even after the claimant underwent the rod-removal surgery, he would be unable to return to his previous occupation because the nature of that employment required twisting, stooping, and bending, which the claimant would never be able to do.

Arbitrator Akemann resolved the evidentiary conflicts in the claimant's favor and specifically found that on October 5, 1990, the claimant sustained an accident arising out of and in the course of his employment with Ming Auto. The arbitrator also found that the claimant's resulting injury was causally connected to his work injury. Arbitrator Akemann further found that the claimant was entitled to temporary total disability (TTD) benefits for 121$^{2}/7$ weeks, representing the period from October 8, 1990, through February 2, 1993, and that the claimant was entitled to reasonable and necessary medical expenses in the amount of $14,640.20, which included payment for the spinal fusion surgery, performed by Dr. Gunnar Andersson in December 1991, and substantial follow-up treatment. In addition, arbitrator Akemann determined that the issues of vocational rehabilitation and maintenance should be deferred until the claimant underwent a second surgery to remove the rods that had been inserted during the 1991 surgery.

Ming Auto sought review of the arbitrator's decision before the Commission. In a unanimous decision dated November 7, 1996, the Commission vacated that portion of the arbitrator's award relating to vocational rehabilitation and to prospective medical treatment because those issues were not properly before the arbitrator at the section 19(b) hearing. The Commission otherwise affirmed and adopted the award, including the findings that the claimant had sustained an employment-related accident and that his condition of ill-being was causally related to that accident. No further appeals were taken from the Commission's decision. No additional hearings were held until November 4, 2002, when the parties appeared before arbitrator Neva

Neal for determination of the issues of additional medical expenses, additional TTD benefits, and permanency.

The only witnesses who testified at the permanency hearing conducted by arbitrator Neal in November 2002 were the claimant and his former wife, Cynthia Marmor. Ms. Marmor testified that she and the claimant lived together at two different locations between October 5, 1990, and October 1994, with the exception of a period following the claimant's December 1991 spinal fusion surgery, and that the claimant did not work in any capacity during that time. On cross-examination, Ms. Marmor was questioned about information contained in a job application, completed by the claimant in 1996, that indicated he had worked at Albany Auto, Inc., from November 1990 through May 1996. Ms. Marmor testified that she was employed by Albany Auto in 1992, the summer of 1993, and for a brief time in 1994, and she knew that the claimant had not worked for that company between October 8, 1990, and 1994.

The claimant, who was 41 at the time of the permanency hearing, testified that Dr. Andersson surgically removed the fusion rods and screws from his back in February 1996. After the surgery, he recuperated for approximately eight weeks and then underwent two different courses of rehabilitation therapy, each of which lasted for four weeks.

The claimant further testified that he began working as an estimator for Pat's High Tech Auto Body on June 1, 1996. He admitted that, before applying for work with this employer, he altered his original resume to indicate that he had worked for Albany Auto between 1990 and 1995, even though he had never been employed by that company. The claimant stated that he had falsified his employment history because he had previously applied for work at 17 other businesses, using his original resume, and had not been hired due to questions about his 1990 work injury and claim. The claimant testified that he worked for Pat's High Tech Auto Body until October 1996, when he was fired due to tardiness and absenteeism, which he attributed to back pain and time he had taken off to go to doctors' appointments.

The claimant stated that he was then employed by Albany Auto between October 1996 and April 2000 and that his duties were similar to those he had performed for Pat's High Tech Auto Body. Initially, his boss at Albany Auto was tolerant of his inability to perform certain tasks due to his back injury. Eventually, however, he began making mistakes. He and his boss mutually agreed that he should leave the company. He looked unsuccessfully for part-time employment as a foreman or estimator and applied for work at between 17 and 20 businesses, but stopped looking when he qualified for social security disability benefits about a year before the November 2002 hearing.

After the claimant stopped seeing Dr. Andersson in 1996, he received extensive care, including acupuncture, psychiatric therapy, and massages, from various treatment providers. The claimant was also placed on a variety of medications, including Prozac, nortriptyline, and a Duragesic patch. He stated that these medications made him feel "dopey." He felt that he could not work full time due to his back pain and need for medication.

On direct examination, the claimant was asked whether he had sustained any other serious injury or trauma since October 1990 that would have caused his back problem, and he affirmatively stated that he had not. On cross-examination, he testified that all of his back problems, medical bills and lost time from work were attributable solely to the 1990 injury at Ming Auto. However, upon further cross-examination, the claimant admitted that he was involved in an automobile collision on October 30, 1996, when his car was struck from behind by a vehicle that was traveling 20 to 30 miles per hour. The claimant acknowledged that he "felt additional discomfort" in his back due to this collision and that he had filed a lawsuit against the driver of the other vehicle. He was represented in that lawsuit by the same attorney who represented him in the section 19(b) and permanency hearings on his workers' compensation claim. The lawsuit against the other driver was eventually settled. In the course of that litigation, the claimant signed sworn answers to interrogatories, which referenced his employment injury but also indicated that he was seeking damages for medical expenses incurred for treatment rendered by Dr. Andersson and other treatment providers involved in his workers' compensation claim. Furthermore, the answers to interrogatories specifically stated that the claimant had never had any kind of emotional or psychiatric injury prior to October 30, 1996, and that he intended to call his current wife to testify that his condition and activities were "normal" prior to the car accident. The claimant testified that his answer to this interrogatory referred to "normal" activity, based on what was usual for him in 1996. The answers to interrogatories were admitted as impeachment, over the claimant's objection.

The claimant did not submit any medical records from Dr. Andersson or the hospital at which his second surgery was performed. He did submit an itemized bill from Dr. Andersson, along with a number of receipts for medication prescribed by the doctor. In all of the records submitted by the claimant that related to the treatment he received beginning in 1996, there is only a single two-page document, dated September 12, 2000, which mentions an automobile accident "three years ago." The claimant submitted records and reports from his fam-

ily physician, Dr. Bajgrowicz, and psychiatrist, Dr. Hong, indicating that he is under treatment for chronic pain and that he takes a variety of medications for his condition. Both physicians stated that these medications caused a variety of side effects, including fatigue.

Ming Auto submitted two letters, dated March 17, 1998, and September 7, 1999, from Dr. Heller, to whom the claimant had been referred by Dr. Andersson. The September 7, 1999, letter stated that the claimant "looks quite good," that he moves independently, that he walks without deficit, and that he needs follow-up care "only as necessary." Both parties submitted records from Dr. Hong from which it could be inferred that the claimant voluntarily left Albany Auto in 2000 in order to work for his father, but that he subsequently left his father's business as well.

Arbitrator Neal determined that she could not alter the prior arbitration decision awarding benefits under section 19(b), but found that the claimant had lied under oath and perpetrated a fraud on both Ming Auto and the Commission. Based on this circumstance, arbitrator Neal concluded that the claimant had not established a causal connection between his October 5, 1990, work accident and his present condition of ill-being or the need for medical treatment rendered after February 2, 1993. Accordingly, the arbitrator refused to award any further benefits under the Act.

The claimant sought review before the Commission, contending that the arbitrator had erred in failing to adopt the previous findings as to accident and causation, which were decided in the 1996 hearing conducted pursuant to section 19(b). The claimant also challenged the arbitrator's admission of the claimant's answers to interrogatories in the automobile collision lawsuit, admitted for purposes of impeachment, and the arbitrator's determination that his testimony was fraudulent. Ming Auto sought review before the Commission, asserting that the arbitrator erred in refusing to reconsider and vacate the prior award under section 19(b) based on fraudulent conduct by the claimant.

The Commission determined that the arbitrator acted correctly in refusing to reconsider and vacate the prior section 19(b) award. Relying on the decision in *Irizarry v. Industrial Comm'n*, 337 Ill. App. 3d 598, 786 N.E.2d 218 (2003), the Commission found that the 1996 findings that the claimant had suffered an employment-related accident and that his resulting injury was causally connected to that accident became final because neither party sought judicial review of the Commission's section 19(b) award. The Commission concluded that the doctrine of law of the case precluded a subsequent challenge or review of those findings. In light of the prior final decision, therefore, the

Commission modified the decision of arbitrator Neal to find that there was a causal connection between the claimant's October 5, 1990, employment-related accident and the subsequent rod-removal surgery performed by Dr. Andersson in February 1996. The Commission further found that the claimant was entitled to additional TTD benefits of $512.66 per week for a period of $16^{1}/_{7}$ weeks, from February 8, 1996, through May 31, 1996; that the claimant was entitled to medical expenses in the amount of $9,969.26; and that the claimant had sustained a permanent partial disability (PPD) to the extent of 25% of the person as a whole and was entitled to PPD benefits in the amount of $329.75 per week for a period of 125 weeks, under section 8(d)(2) of the Act. The Commission also found that the claimant failed to prove a causal connection between his work injury and his condition of ill-being after May 31, 1996, and that the arbitrator's evidentiary rulings were correct.

The claimant filed a petition for judicial review of the Commission's decision in the circuit court of Cook County. The circuit court confirmed the Commission's decision in all respects. Ming Auto has appealed the decision of the circuit court, and the claimant has filed a cross-appeal.

## ANALYSIS

Ming Auto initially argues that the Commission erred in refusing to reconsider and vacate the prior award under section 19(b) based on fraudulent conduct by the claimant. The issue of whether the Commission had the authority to reconsider and vacate the prior section 19(b) award raises a question of law, which we review *de novo*. See *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553, 837 N.E.2d 909 (2005); *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271, 807 N.E.2d 423 (2004).

The Commission determined that the 1996 findings that the claimant had suffered an employment-related accident and that his resulting injury was causally connected to that accident became final because neither party sought judicial review of the Commission's section 19(b) award. The Commission concluded that the doctrine of law of the case precluded a subsequent challenge or review of those findings.

Under the law-of-the-case doctrine, a court's unreversed decision on an issue that has been litigated and decided settles the question for all subsequent stages of the action. *Miller v. Lockport Realty Group, Inc.*, 377 Ill. App. 3d 369, 374, 878 N.E.2d 171 (2007). This court has held that the principles underlying the law-of-the-case doctrine should be applied to matters resolved in proceedings before the Commission. In *Irizarry v. Industrial Comm'n*, 337 Ill. App. 3d 598, 786 N.E.2d 218

(2003), the court noted that where an award of benefits, based on a finding of a causal connection between the claimant's work accident and the claimed injuries, is not challenged as set forth in the Act, it becomes final and conclusive and cannot be challenged in a permanency hearing. *Irizarry*, 337 Ill. App. 3d at 605-06. The court further observed that, once the first causation finding became a final judgment, it also became the law of the case and was not subject to further review. *Irizarry*, 337 Ill. App. 3d at 606-07. Accordingly, the court held that the second arbitrator and the Commission were precluded from revisiting the question of whether the claimant's accident resulted in injuries to his neck, right shoulder, and back. *Irizarry*, 337 Ill. App. 3d at 606-07.

In this case, as recognized by both arbitrator Neal and the Commission, the issues of whether the claimant has sustained an employment-related accident and whether his resulting injury was causally connected to the work accident were resolved in the section 19(b) proceeding. That decision was not challenged, and it became final in 1996. Thus, the law-of-the-case doctrine precluded arbitrator Neal and the Commission from revisiting those questions in the permanency hearing. See *Irizarry*, 337 Ill. App. 3d at 606-07.

Yet, Ming Auto asserts that the law-of-the-case doctrine does not preclude the Commission from setting aside the prior award because (1) the language of section 19(f) of the Act grants the Commission authority to reconsider a prior ruling where it has been shown that the claimant engaged in fraud, and (2) the Commission has inherent authority to reconsider its prior rulings under circumstances such as those presented in this case. Both of these assertions are incorrect.

Ming Auto's first assertion requires construction of section 19 of the Act. Statutory construction is a question of law, which is reviewed *de novo*. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 12, 678 N.E.2d 1009 (1996); *Wal-Mart Stores, Inc. v. Industrial Comm'n*, 324 Ill. App. 3d 961, 965, 755 N.E.2d 98 (2001). The primary rule of statutory construction requires that effect must be given to the intent of the legislature. *Advincula*, 176 Ill. 2d at 16; *Wal-Mart Stores, Inc.*, 324 Ill. App. 3d at 967. In ascertaining the legislature's intent, courts begin by examining the language of the statute, reading the statute as a whole, and construing it so that no word or phrase is rendered meaningless or superfluous. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990); *Wal-Mart Stores, Inc.*, 324 Ill. App. 3d at 967. Statutory language that is clear and unambiguous must be given effect without resort to other aids of construction. *People v. Woodard*, 175 Ill. 2d 435, 443, 677 N.E.2d 935 (1997); *Wal-Mart Stores, Inc.*, 324 Ill. App. 3d at 967.

In defining the method of judicial review of a Commission decision, section 19(f) of the Act states that "[t]he decision of the Commission acting within its powers *** shall, in the absence of fraud, be conclusive unless reviewed as in this paragraph hereinafter provided." 820 ILCS 305/19(f) (West 2002). The Act further provides that "[a] proceeding for review shall be commenced within 20 days of the receipt of notice of the decision of the Commission." 820 ILCS 305/19(f)(1) (West 2002).

Ming Auto argues that the phrase "in the absence of fraud" contained in section 19(f) creates a statutory exception that permits an arbitrator and the Commission to reconsider and vacate a prior final award that was entered as a result of fraud. Based on this language, Ming Auto contends that arbitrator Neal and the Commission had authority and discretion to reconsider and vacate the section 19(b) award based on the fraudulent conduct of the claimant. This contention is without merit.

The relevant language in section 19(f) does not confer authority upon the Commission to reopen and set aside a previous award. *Michelson v. Industrial Comm'n*, 375 Ill. 462, 467-68, 31 N.E.2d 940 (1941); *Roadside Auto Body, Inc. v. Miller*, 285 Ill. App. 3d 105, 111, 673 N.E.2d 1145 (1996). Rather, this language refers to a court's ability to review a final decision of the Commission that was based on fraud. See *Roadside Auto Body, Inc.*, 285 Ill. App. 3d at 111. Thus, a party may maintain an action before the circuit court to procure relief from a judgment of the Commission based on fraud. See *Roadside Auto Body, Inc.*, 285 Ill. App. 3d at 111 (declaratory judgment action seeking to vacate, as fraudulent, a settlement agreement approved by the Commission); *Daugherty v. National Union Electric Corp.*, 160 Ill. App. 3d 747, 749, 514 N.E.2d 196 (1987) (action for fraud alleging that the plaintiff's employer had fraudulently understated his wages, which resulted in an award that was substantially below the amount to which the plaintiff would otherwise have been entitled). In such circumstances, a court can review an otherwise conclusive decision by the Commission, even if the procedures and time limitations set forth in section 19(f)(1) have not been followed. 820 ILCS 305/19(f) (West 2002); *Roadside Auto Body, Inc.*, 285 Ill. App. 3d at 111; *Daugherty*, 160 Ill. App. 3d at 749. The clear and unambiguous language contained in section 19(f) does not authorize an arbitrator or the Commission to reopen and set aside a prior final decision, even where it is asserted that the award was based on fraud.

We also reject Ming Auto's assertion that the Commission has inherent authority to reconsider its prior rulings where it is alleged that a previous award was based on fraud. The Commission is an

administrative agency that has no general or common-law powers. *Alvarado*, 216 Ill. 2d at 553. Rather, its powers are strictly limited to those particularly granted by the legislature, and any action taken by the Commission must be specifically authorized by statute. *Alvarado*, 216 Ill. 2d at 553. Any administrative action that goes beyond its specific statutory authority is void. *Alvarado*, 216 Ill. 2d at 554.

The Act specifies two instances where the Commission may reopen or modify a final award. Section 19(f) permits the Commission to correct clerical or computational errors, if raised within 15 days after the date of receipt of an award. 820 ILCS 305/19(f) (West 2002). Also, section 19(h) allows the Commission to review a prior award where an employee's disability has recurred, increased, diminished or ended. 820 ILCS 305/19(h) (West 2002). Neither of these statutory provisions permits the Commission to generally reconsider the evidentiary basis or factual findings underlying an award that has become final. In the absence of such statutory authority, the Commission has no inherent power to reconsider a prior ruling. See *Alvarado*, 216 Ill. 2d at 558; *Chambers v. Industrial Comm'n*, 132 Ill. App. 3d 891, 893, 478 N.E.2d 498 (1985).

Illinois courts have specifically recognized that the Act does not authorize the filing of petitions for rehearing from final Commission decisions. *Wilson-Raymond Constructors Co. v. Industrial Comm'n*, 79 Ill. 2d 45, 56, 402 N.E.2d 584 (1980); *Wal-Mart Stores, Inc.*, 324 Ill. App. 3d at 966; *Chambers*, 132 Ill. App. 3d at 893. Because the Act does not provide for requests for rehearing or reconsideration by the Commission, the only recourse available is to seek judicial review under section 19(f) within the statutory time limit. *Chambers*, 132 Ill. App. 3d at 893. Consequently, except under the specific circumstances outlined above, the Commission lacks authority to reconsider or vacate an award entered in a prior final decision. See *Alvarado*, 216 Ill. 2d at 558; *Chambers*, 132 Ill. App. 3d at 893.

■ In this case, the initial decision of the Commission affirmed and adopted the arbitrator's findings that the claimant had sustained an employment-related accident on October 5, 1990, and that his condition of ill-being was causally related to that accident. Neither party appealed the Commission's 1996 decision, which became final 20 days after the parties received notice thereof. Accordingly, the Commission lacked statutory authority to reconsider or vacate that decision. See *Alvarado*, 216 Ill. 2d at 558; *Chambers*, 132 Ill. App. 3d at 893. Therefore, we reject Ming Auto's claim that arbitrator Neal and the Commission erred in failing to reconsider and vacate the previous section 19(b) award.

Our decision that the prior section 19(b) award was not subject to

vacatur by either the arbitrator or the Commission should not be read to condone fraudulent conduct in the request for workers' compensation benefits. We are compelled to apply the statutory language as written. Based on the clear and unambiguous terms of section 19(f), judicial review by a court is the only means of challenging a final Commission decision that is alleged to have been based on fraud. See 820 ILCS 305/19(f) (West 2002); *Roadside Auto Body, Inc.*, 285 Ill. App. 3d at 111; *Daugherty*, 160 Ill. App. 3d at 749. This court is not free to expand the authority of the Commission beyond that particularly set forth in the Act. See *Alvarado*, 216 Ill. 2d at 553. That right falls within the exclusive province of the legislature. Thus, although we expressly condemn the use of fraud in proceedings under the Act, scrupulous adherence to the terms of the statute mandates the result reached above.

■ Ming Auto next contends that the Commission erred in finding that the claimant was entitled to additional TTD benefits from February 8, 1996, to May 31, 1996. In support of this contention, Ming Auto asserts that the claimant waived the right to seek TTD benefits for this period by failing to specifically request such benefits on the 2002 request-for-hearing form. We disagree.

The record affirmatively demonstrates that prior to the 2002 permanency hearing, arbitrator Neal identified the claimant's entitlement to additional TTD benefits as a disputed issue, and Ming Auto did not contest the claimant's right to seek such benefits. Accordingly, Ming Auto has forfeited this issue on appeal. See *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278, 695 N.E.2d 481 (1998) (noting that issues not raised before the administrative agency are forfeited on administrative review).

■ Ming Auto also argues that the award of additional TTD benefits for the period of February 8, 1996, to May 31, 1996, following the rod-removal surgery, is not supported by evidence in the record. This argument is without merit.

A claimant is temporarily totally disabled from the time an injury incapacitates him from work until such time as his condition has stabilized or he is as far recovered as the character of his injury will permit. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118, 561 N.E.2d 623 (1990); *Nascote Industries v. Industrial Comm'n*, 353 Ill. App. 3d 1056, 1059, 820 N.E.2d 570 (2004). In order to prove temporary total disability, the employee must demonstrate not only that he did not work, but also that he was unable to work. *Rambert v. Industrial Comm'n*, 133 Ill. App. 3d 895, 903, 477 N.E.2d 1364 (1985). The time period of TTD is a question of fact for the Commission, and its decision should not be disturbed unless it is against

the manifest weight of the evidence. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118-19, 561 N.E.2d 623 (1990). In resolving questions of fact, it is the function of the Commission to judge the credibility of the witnesses and resolve conflicting medical evidence. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980). A factual finding by the Commission will not be set aside on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987). For a finding of fact to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *University of Illinois v. Industrial Comm'n*, 365 Ill. App. 3d 906, 910, 851 N.E.2d 72 (2006). If there is sufficient factual evidence in the record to support the Commission's determination, it will not be set aside on appeal. *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450, 657 N.E.2d 1196 (1995).

Here, the deposition testimony of Dr. Andersson and Dr. Lagattuta, presented at the initial section 19(b) hearing, established that, in their professional opinions, the claimant should undergo a second surgical procedure to remove the hardware inserted in his back during the 1991 fusion surgery. Both Drs. Andersson and Lagattuta recommended this procedure to the claimant. In addition, Dr. Andersson testified regarding the approximate duration of the claimant's incapacitation as a result of this procedure. In particular, Dr. Andersson stated that the recommended surgery would necessitate a 3-day hospital stay and a recuperation period of 8 to 10 weeks, with approximately 4 weeks of rest before commencing 4 to 6 weeks of rehabilitation therapy. According to Dr. Andersson, the rod-removal procedure is similar to the fusion surgery in that the muscles and tissues need to heal. Dr. Lagattuta testified that the claimant would require six weeks of rehabilitation therapy after the rod-removal surgery. The claimant testified that he recovered from the February 1996 surgery for approximately eight weeks and then underwent two different courses of rehabilitation therapy recommended by Dr. Andersson, each of which was four weeks in duration. Based on this testimony, we find that the record contains a sufficient evidentiary basis for the Commission's determination that the claimant was entitled to additional TTD benefits for $16^{1}/_{7}$ weeks from February 8, 1996, to May 31, 1996.

■ Ming Auto claims that the Commission improperly relied on its own experience in awarding additional TTD benefits to the claimant. We acknowledge that the TTD award made reference to the Commission's own experience in reviewing medical records relating to fusion surgeries. However, even where an administrative agency considers

improper evidence or factors, the decision is not subject to reversal where it is supported by other evidence in the record or where the improper evidence did not result in prejudice. See generally *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 536-37, 865 N.E.2d 342 (2007); *Greaney v. Industrial Comm'n*, 358 Ill. App. 3d 1002, 1013, 832 N.E.2d 331 (2005). Based on the evidence presented in the record, we conclude that the Commission's award of additional TTD benefits from February 8, 1996, to May 31, 1996, was not against the manifest weight of the evidence.

■ Ming Auto next challenges the award of PPD benefits in the amount of $329.75 per week for a period of 125 weeks. In support of its challenge, Ming Auto cites that portion of the Commission's decision that states "[i]t is unnecessary for the Commission to determine whether [the claimant] is guilty of fraud because no benefits are awarded after May 31, 1996." Ming Auto appears to claim that the Commission's decision is internally inconsistent because PPD benefits, by definition, are not payable until after the claimant has no further entitlement to TTD benefits, which occurred in this case on May 31, 1996. This claim misconstrues the nature and purpose of the Commission's award of PPD benefits.

Various types of compensation may be awarded under the Act to a claimant who has proven that he sustained a disability as a result of a work-related injury. See *Gallianetti v. Industrial Comm'n*, 315 Ill. App. 3d 721, 727, 734 N.E.2d 482 (2000). Section 8(d)(2) provides for the grant of a PPD award based on loss of a percentage of the person as a whole. 820 ILCS 305/8(d)(2) (West 2002). Section 8(d)(2) generally applies to those cases in which a claimant suffers serious and permanent injuries that partially incapacitate him from pursuing the usual and customary duties of his line of employment or which have otherwise resulted in physical impairment. 820 ILCS 305/8(d)(2) (West 2002); *McKay Plating Co. v. Industrial Comm'n*, 91 Ill. 2d 198, 205, 437 N.E.2d 617 (1982); see also *Yellow Freight Systems v. Industrial Comm'n*, 351 Ill. App. 3d 789, 795, 814 N.E.2d 910 (2004). Under section 8(d)(2) of the Act, a claimant receives compensation for that percentage of 500 weeks that his partial disability bears to his total disability. 820 ILCS 305/8(d)(2) (West 2002). Thus, although PPD benefits are calculated based on the appropriate percentage of 500 weeks that correlates to the claimant's partial disability, a PPD award is designed to compensate a claimant for a permanent disability resulting from a physical impairment and is not premised on a particular number of weeks of incapacity. 820 ILCS 305/8(d)(2) (West 2002); *McKay Plating Co.*, 91 Ill. 2d at 205; see also 4 A. Larson & L. Larson, Worker's Compensation Law §80.02, at 80—2 (2000). We, therefore,

reject Ming Auto's contention that the Commission's decision was internally inconsistent because it granted the claimant PPD benefits and also stated that no benefits were awarded after May 31, 1996.

We also find that the Commission did not err in awarding PPD benefits without considering the fact that the claimant had testified falsely regarding the October 30, 1996, automobile accident. A determination of the extent or permanency of a claimant's disability is a question of fact, and the Commission's decision will not be set aside unless it is against the manifest weight of the evidence. *Peabody Coal Co. v. Industrial Comm'n*, 355 Ill. App. 3d 879, 883, 823 N.E.2d 1107 (2005); *Roper Contracting v. Industrial Comm'n*, 349 Ill. App. 3d 500, 506-07, 812 N.E.2d 65 (2004). The test is whether there is sufficient factual evidence in the record to support the Commission's determination, not whether this court, or any other tribunal, might reach a different result. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450, 440 N.E.2d 90 (1982); *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828, 833, 769 N.E.2d 66 (2002). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

In this case, both Dr. Andersson and Dr. Lagattuta testified that, as a result of his work-related accident, the claimant was unable to perform the physical tasks of his occupation. The claimant's doctors agreed that he could only work at a medium level of exertion, meaning that he could occasionally lift a maximum of 75 pounds and could frequently lift 35 pounds. In addition, Dr. Andersson testified that, even after the claimant underwent the rod-removal surgery, he would not be able to progress beyond the ability to work at the medium level of exertion described above. Dr. Lagattuta stated that, even after the claimant underwent the rod-removal surgery, he would be unable to return to his previous occupation because the nature of that employment required twisting, stooping, and bending, which the claimant would never be able to do. These medical opinions were based on examinations performed and information obtained as of November 1995, almost one year before the October 30, 1996, automobile accident and seven years prior to the permanency hearing. Therefore, the claimant's failure to be forthright by testifying at the permanency hearing that he had not sustained any other serious injury or trauma since October 1990 that would have caused his back problem does not justify reversal of the Commission's finding that he had sustained a permanent injury as a result of his work accident. Based on the record before us, we find that there was sufficient evidence to support the Commission's decision that the claimant suffered a permanent partial

disability to the extent of 25% of the person as a whole. Consequently, we find that the award of PPD benefits is not against the manifest weight of the evidence.

■ We next address the cross-appeal filed by the claimant. Initially, we observe that the claimant's notice of cross-appeal indicated that he sought review of the Commission's denial of permanent total disability (PTD) benefits. However, the claimant's brief does not include any argument with regard to this issue. Consequently, the claimant has forfeited any challenge of the denial of PTD benefits. See 210 Ill. 2d R. 341(h)(7) (stating that the argument section of a brief shall contain the contentions of the appellant and the reasons therefor, with citation to authorities and the pages of the record relied on).

■ The claimant also argues that arbitrator Neal erred in allowing Ming Auto to impeach his testimony by presenting his sworn answers to interrogatories in the automobile collision lawsuit. We note that the claimant has not alleged that the improper admission of interrogatory answers resulted in an erroneous denial of benefits by the Commission. Because there is no indication in the record that the admission of the impeachment evidence influenced the Commission's decision in any way, this claim of error has no bearing on the case before us. We will, however, address this issue in light of the fact that the Commission specifically upheld the arbitrator's evidentiary rulings.

The credibility of a witness may be tested by showing that, at a prior time, he made a statement which is inconsistent with his trial testimony on a material matter. *Sommese v. Maling Brothers, Inc.*, 36 Ill. 2d 263, 268-69, 222 N.E.2d 468 (1966); *Edward Don Co. v. Industrial Comm'n*, 344 Ill. App. 3d 643, 652, 801 N.E.2d 18 (2003). "If, upon questioning, the witness denies having made the prior inconsistent statement or gives equivocal answers to questions regarding the prior statement, the impeachment must be completed by later offering evidence of the inconsistent statement." *Edward Don Co.*, 344 Ill. App. 3d at 652; *Morris v. Milby*, 301 Ill. App. 3d 224, 231, 703 N.E.2d 121 (1998); *People v. Kluppelberg*, 257 Ill. App. 3d 516, 533-34, 628 N.E.2d 908 (1993). However, if a witness admits having made the statement, the actual statement need not be introduced. *Kluppelberg*, 257 Ill. App. 3d at 533-34. The scope and extent of cross-examination are within the discretion of the arbitrator. *Johns-Manville Products Corp. v. Industrial Comm'n*, 78 Ill. 2d 171, 181, 399 N.E.2d 606 (1979); *Edward Don Co.*, 344 Ill. App. 3d at 652.

We conclude that arbitrator Neal did not abuse her discretion in admitting the claimant's prior interrogatory answers for impeachment purposes. At the permanency hearing, the claimant affirmatively testified on direct examination that all of his back problems, medical bills

and lost time from work were attributable solely to the 1990 injury at Ming Auto. This testimony opened the door for further examination regarding the nature and cause of the claimant's condition of ill-being. On cross-examination, the claimant admitted that he had been involved in an automobile collision in October 1996 and that he had brought a lawsuit against the driver of the other vehicle. He also admitted that his interrogatory answers filed in that litigation indicated that his damages included medical expenses incurred as a result of treatment rendered by Dr. Andersson and other treatment providers involved in his workers' compensation claim. These answers directly contradicted the claimant's testimony that his back problems and medical bills were solely attributable to the work injury in October 1990. Therefore, the claimant's sworn interrogatory answers constituted proper impeachment and were admissible to challenge his credibility at the 2002 permanency hearing. We also conclude that there was no need to complete the impeachment because the claimant admitted that he had made the prior statements in his interrogatory answers. See *Edward Don Co.*, 344 Ill. App. 3d at 652; *Kluppelberg*, 257 Ill. App. 3d at 533-34. Accordingly, we find no error in the Commission's affirmance of the arbitrator's evidentiary rulings.

Finally, the claimant asserts that, if the decision of the circuit court is not affirmed, the cause should be remanded to the Commission to permit the inclusion of additional medical records and documents that do not appear in the record on appeal. Because we have affirmed the decision of the circuit court, which confirmed all aspects of the Commission's decision, we need not address this argument.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court which confirmed the Commission's decision.

Affirmed.

McCULLOUGH, P.J., and GROMETER, HOLDRIDGE, and DONOVAN, JJ., concur.