2020 IL App (1st) 191428WC-U

No. 1-19-1428WC

Order Filed: October 9, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed by Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| PROVISO HIGH SCHOOL DISTRICT #209, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14-L-50535 |
| | ) | 19-L-50018 |
| | ) | 19-L-50025 |
| ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION and TRACY McCORMICK, | ) | Honorable |
| | ) | James M. McGing, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Holdridge and Justices Harris, Hoffman, and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court erred in reversing the Commission's decision, finding that claimant's condition of ill-being after June 28, 2013, was unrelated to the work accident, as the decision was not against the manifest weight of the evidence.

1

¶ 2 In March 2013, claimant, Tracy McCormick, filed an application for adjustment of claim pursuant to the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2012)), seeking benefits for injuries she sustained from an accidental fall on February 27, 2013, while working for her employer, Proviso High School District #209 (Proviso). The Illinois Workers' Compensation Commission (Commission) found claimant had failed to prove that her condition of ill-being subsequent to June 28, 2013, was attributable to the work-related accident. On review, the circuit court of Cook County reversed and remanded the Commission's decision, finding it was against the manifest weight of the evidence.

¶ 3 On remand, acknowledging that it was bound by the circuit court's decision, the Commission found that claimant's condition of ill-being after June 28, 2013 was causally related to the February 27, 2013, accident and awarded additional benefits, including temporary total disability (TTD) benefits through August 12, 2013. Proviso filed a timely petition for judicial review in the circuit court of Cook County, which later confirmed the Commission's decision on remand. Proviso appealed.

¶ 4 For the following reasons, we find that the Commission's original decision was not against the manifest weight of the evidence. Accordingly, we reverse the circuit court's judgment reversing and remanding the Commission's original decision, vacate the Commission's decision on remand, vacate the circuit court's order confirming the Commission's decision, and reinstate the Commission's original decision.

¶ 5                                          I. Background

¶ 6 Claimant's testimony and the evidence presented at the arbitration hearing, held on August 12, 2013, is summarized below. We have limited the background summary to those pertinent to this appeal.

¶ 7     Claimant, a 48-year-old wellness teacher, testified to the following. Claimant works at Proviso Mathematics and Science Academy, where she is the department chair. Her job duties require her to oversee the wellness and visual arts departments and staff, including counselors, social workers and the school nurse. She also works as a behind-the-wheel driver's education instructor after school.

¶ 8     On February 27, 2013, a coworker gave claimant a ride from Proviso Math and Science Academy to Proviso East High School to pick up a car for driver's education. When claimant exited the vehicle's passenger door, her left leg went into a four-foot-deep open manhole, causing her to fall so hard and fast that "it was like life stopped." She explained that the momentum of her weight caused the front of her left leg to hit the front of the manhole while her left shoulder hit the ground. After she was able to quickly "army [crawl]" out of the hole, she had extreme pain in her left shoulder, similar to pain she had experienced one year earlier before she had right rotator cuff surgery. She also twisted her back but claimed that her left leg, which she believed was broken, was the major concern at the time.

¶ 9     Following the incident, the same coworker gave claimant a ride to Proviso East High School where claimant visited the school nurse and then reported the incident to the principal, her supervisor, in the main office while icing her knee. Claimant continued icing her knee while she attended a meeting later that day. As the meeting progressed, however, her whole leg became increasingly sore, and the outside of her leg had "an extreme burning pain." Subsequently, claimant sought treatment at Gottlieb Memorial Hospital Emergency Room, where she complained of pain in her left shoulder, left knee, left ankle and lower back as a result of the fall. Upon examination, Dr. Nathanial Jones determined that claimant had sustained a contusion of the left knee. X-rays of the left shoulder, tibia and fibula were normal. Claimant was diagnosed with a left leg injury with

3

contusion, a left shoulder injury and a lower back injury. She was prescribed a regimen of anti-inflammatory medication and ordered to follow up if her condition did not improve.

¶ 10    In the days following the accident, claimant noticed increasing pain and numbness in her left leg and lingering pain in her left shoulder. As instructed, she followed up with Dr. Jones on March 2, 2013, where she complained primarily of left ankle pain that increased in severity when she used stairs. Although x-rays of the left ankle appeared normal, Dr. Jones prescribed claimant a CAM walking boot for her left ankle and directed her to undergo physical therapy at Athletico.

¶ 11    On March 4, 2013, claimant began physical therapy at Athletico, where she described the pain in her left lower extremity from the knee down to her calf as "fire." She also complained of low back, left shoulder pain and left ankle pain that worsened with physical activity. Claimant was prescribed physical therapy three times a week for four weeks.

¶ 12    On March 21, 2013, claimant presented for a follow-up appointment with Dr. Jones. Dr. Jones noted that claimant reported worsening pain in her left lower extremity but improving back and left shoulder pain. Dr. Jones ordered an MRI of claimant's left knee and ankle, and he instructed her to discontinue wearing the CAM walking boot because it aggravated her pain.

¶ 13    On March 25, 2013, claimant underwent an MRI of her left knee at Loyola University Medical Center. The reviewing radiologist noted a small oblique tear of the body and posterior horn of the medial meniscus, involving the interior articular surface. The radiologist also noted mild cartilage fissuring at the patellar apex and lateral femoral condyles, but there was no evidence of peroneal neuropathy. An EMG of the left lower extremity did not show any evidence of neuropathy. The MRI scan of her left lower leg from the knee down through the left ankle was unremarkable.

¶ 14    On April 1, 2013, at Proviso's request, claimant underwent an independent medical

4

examination (IME) with Dr. G. Klaud Miller, a board-certified orthopedic surgeon. Dr. Miller reviewed the accident report; pictures of the scene; Gottlieb Memorial Hospital's treatment records from February 27, 2013, through March 21, 2013; the March 26, 2013, MRI results; and physical therapy records from Athletico. Dr. Miller also obtained an independent history and conducted a physical examination of claimant. Dr. Miller noted that the mechanism of injury was a competent cause of her complaints; however, there was some discrepancy between claimant's subjective complaints and the objective findings. In particular, claimant's complaints were unsupported by the MRI results, which revealed some mild degenerative changes and showed no evidence of a true torn cartilage. According to Dr. Miller, the absence of effusion and the diffuse and nonfocal tenderness was not supportive of a torn cartilage. Thus, in contrast to the radiologist's opinion, Dr. Miller observed that the MRI revealed no evidence of a "discrete tear."

¶ 15    Dr. Miller also opined that claimant may have sustained a peroneal nerve contusion of the left lower extremity and a SLAP lesion of the left shoulder, which were also consistent with the mechanism of injury. Again, Dr. Miller noted that claimant's complaints seemed excessive for a "relatively mild abnormal examination" but consistent with a SLAP lesion. Dr. Miller recommended an MRI of the left shoulder and injections to the left knee and shoulder with cortisone and local anesthesia to confirm or deny intra-articular pathology.

¶ 16    On April 8, 2013, claimant returned to Dr. Jones complaining of increasing numbness, tingling and burning down her left lower extremity that worsened with prolonged standing. Dr. Jones indicated his concern for possible nerve injury secondary to claimant's fall. Dr. Jones ordered claimant off work, to undergo an EMG of the left lower extremity and referred her for an orthopedic surgery consultation with Dr. Pietro Tonino.

¶ 17    On April 10, 2013, claimant underwent an EMG of the left lower extremity. The EMG

results were normal.

¶ 18    On April 15, 2013, claimant presented to Dr. Tonino complaining of left shoulder and knee pain. Dr. Tonino noted that "[i]t sounds like she contused her left leg," but "[h]er MRI shows the possibility of a medial meniscus tear of the left knee and some chondromalacia of her left knee." Upon examining claimant, Dr. Tonino observed tenderness over the inferior pole of the patella, medial and lateral border of the patella, decreased elevation, as well as external and internal rotation of the left shoulder compared to the right shoulder. Dr. Tonino diagnosed a left knee contusion and left shoulder injury. After Dr. Tonino injected claimant's left shoulder with Depo-Medrol and local anesthetic, he directed her to continue physical therapy and remain off work for several weeks. After administering the injections, Dr. Tonino noted an immediate improvement in claimant's symptoms. Claimant also testified that the shoulder injection caused marked improvement in her shoulder pain, which she described as "like magic." Claimant was referred to a rehabilitation specialist, Dr. Singh Bajaj, to address ongoing numbness in her left lower extremity.

¶ 19    On May 2, 2013, Dr. Miller issued an addendum to his April 1, 2013, report. In the addendum, Dr. Miller offered his opinion on claimant's ability to return to work for Proviso. Based on his consideration of claimant's job description, which was provided by Proviso, and claimant's injuries, Dr. Miller opined that claimant could fulfill the job's physical demands and, therefore, could return to full-duty work. On cross-examination, however, claimant addressed several deficiencies in the job description Proviso provided to Dr. Miller. According to the claimant, the description was incomplete because it omitted her responsibilities as department chair, which required her to monitor 12 other employees and perform a daily room-to-room walk-through to evaluate other teachers. She also noted that her duties as a driver education instructor require her

6

to frequently sit in a position to utilize the brake while students drove. Lastly, she indicated that the description does not account for her job as a wellness instructor, which requires her to walk across the grounds of the school with her classes to perform various physical activities.

¶ 20    On May 8, 2013, claimant presented to Dr. Singh Bajaj, a physiatrist at Loyola University Medical Center, for an examination. At that time, claimant complained of pain and a burning sensation along the lateral aspect of the left lower extremity from below the knee into her left foot. Claimant indicated that this pain worsened with any knee bending. Based on claimant's reported history and symptoms, coupled with the physical examination, Dr. Bajaj opined that claimant's condition was consistent with peroneal neuropathy at the fibular head following the fall. Claimant was instructed to continue physical therapy and prescribed Diclofenac, which was later modified due to chest pains.

¶ 21    On May 20, 2013, claimant, again, presented to Dr. Tonino. At that time, claimant complained of pain and intermittent numbness in her left leg that worsened when she stood. Dr. Tonino noted that claimant suffered a direct contusion over the peroneal nerve, which likely caused her symptoms. He instructed claimant to remain off work and continue physical therapy.

¶ 22    On June 19, 2013, the physical therapist at Athletico noted that claimant's left shoulder pain and associated complaints had improved, but she had persistent left lower extremity pain and complaints. Occasional left knee locking was noted as well.

¶ 23    On June 20, 2013, claimant returned to Dr. Tonino complaining of left knee locking and ongoing pain and problems. Dr. Tonino noted the lack of progression with physical therapy and, based upon the failure of conservative treatment, suggested an arthroscopic evaluation of the knee with partial medial meniscectomy. Dr. Tonino discontinued therapy for the left lower extremity

7

but advised claimant to continue physical therapy for her left shoulder. Given the improvement in her left shoulder, however, claimant discontinued physical therapy.

¶ 24 Later that same day, claimant presented to Dr. James Kellershabrokh, an associate of Dr. Bajaj. Dr. Kellershabrokh noted that physical therapy for the knee had strengthened claimant's leg. Dr. Kellershabrokh also noted that claimant continued to experience tingling, numbness and soreness over the anterolateral shin, which worsened following any weight-bearing activity. Dr. Kellershabrokh opined that claimant likely had a superficial peroneal nerve injury, given that the EMG in April 2013 was normal. Dr. Kellershabrokh recommended a topical anesthetic cream and noted that the only reason to consider repeating the superficial peroneal nerve conduction study would be if surgical exploration was considered.

¶ 25 At the arbitration hearing, three surveillance videos, along with accompanying reports containing summaries and still images from the videos were admitted without objection. Proviso obtained the videos from Bonnamy and Associates, an insurance investigation company. The videos and reports documented claimant's activities on May 4, 2013, May 8, 2013 and May 10, 2013. The May 4, 2013, video depicts claimant walking and carrying several folding lawn chairs on her left shoulder without any observable sign of pain or discomfort or any noticeable limp. Claimant is later observed sitting in a lawn chair at a youth softball game, variously crossing and uncrossing her legs at times and displaying no observable sign of pain or discomfort. The May 8, 2013, video depicts claimant driving to Loyola Medical Center for physical therapy. Lastly, the May 10, 2013, video depicts claimant unloading her van. Claimant is observed carrying multiple items, specifically including an armful of clothing, multiple bags in each hand, and what appears to be a golf bag, while making approximately 8 to 10 trips from the curb, where her van is parked,

across the lawn and up approximately ten steps leading to her home. Once again, claimant displayed no noticeable limp or outward sign of pain or discomfort.

¶ 26 On June 28, 2013, Dr. Miller issued a second addendum to his April 1, 2013, report. Dr. Miller reviewed the surveillance videos and concluded that there was no evidence to support a physical disability in either claimant's left lower extremity or left shoulder. Dr. Miller reiterated his April 1, 2013, findings that claimant had significantly more symptoms than he could substantiate on the minimally abnormal examination. He further commented that "[t]his video suggests that whatever symptoms she may or may not have had at the time of my examination have resolved. In my opinion, based upon this video[,] no further treatment is necessary ***."

¶ 27 In response to these videos, claimant testified that she was in continuous pain and that no doctor had restricted her from walking. In fact, claimant testified that she was instructed to walk by her doctor and then report any marked changes in her symptoms. She also claimed that she never unloaded golf clubs from her vehicle, but she speculated that the bag in question was likely her daughter's softball equipment bag, which she claimed weighed 10 pounds or less.

¶ 28 On July 23, 2013, Dr. Miller issued his third addendum report, which included a review of his previous reports and a new packet of records containing the April 10, 2013, EMG; Dr. Tonino's treatment records from April 15, 2013, through June 20, 2013; Dr. Bajaj's May 8, 2013, evaluation; and claimant's physical therapy records from April 10, 2013, through June 17, 2013. Dr. Miller first expressed that "[i]t is difficult for [him] to make any definitive statements because the last time [he] examined [claimant] was almost four months ago ***." Nevertheless, Dr. Miller stated that claimant's shoulder condition had largely resolved itself but that her left knee remained much more problematic. Dr. Miller also explained that almost all of claimant's symptoms for the past several months were located on the lateral side and consistent with a peroneal nerve lesion,

although the EMG was negative. Additionally, as noted in his April 1, 2013, report, Dr. Miller had personally reviewed the MRI and "respectfully [disagreed] with the radiologist," stating that he did not observe anything that he would call true torn cartilage. While Dr. Miller could not dispute the possibility of a torn meniscus, given that an MRI can miss 20% of true torn cartilages, he opined that it was impossible to conclude that claimant sustained a torn meniscus in the absence of effusion and due to the significant variability of her symptoms. Again, Dr. Miller recommended a cortisone injection and noted that an arthroscopy was appropriate if the injections did not eliminate her symptoms. He expressed, however, that "any connection to the incident in question is at best questionable." In conclusion, Dr. Miller stated the following:

"[S]ince [claimant] had approximately two months where she did not have any medial-sided symptoms whatsoever and based upon the complete lack of apparent problems in her left knee in the May surveillance, to a reasonable degree of medical certainty, if there is a torn cartilage, I cannot relate it to the incident in question."

¶ 29    Claimant testified that her lower back pain and problems have since resolved. Although she experienced occasional pain and popping in her left shoulder, her left shoulder pain and problems had practically resolved. Consequently, she did not seek additional medical treatment for her left shoulder. Claimant also continued to experience ongoing pain and problems in her left lower extremity and locking in her left knee with extended activity. She expressed a desire to proceed with the proposed surgery so she could return to work at Proviso. Prior to the accident, claimant did not receive medical treatment for her left knee, and she did not suffer pain or problems related to her left knee.

¶ 30    On October 24, 2013, the arbitrator awarded claimant TTD and medical benefits for the period of April 8, 2013, through June 28, 2013. The arbitrator denied benefits and prospective

medical care after June 28, 2013, finding that claimant's current condition of ill-being in her low back, left knee and left shoulder was not causally related to the February 27, 2013, accident.

¶ 31     On November 15, 2013, claimant appealed the arbitrator's decision to the Commission. On June 17, 2014, the Commission affirmed and adopted the arbitrator's decision. In doing so, the Commission summarized the evidence and made additional notations in support of its decision. In particular, the Commission summarized Dr. Miller's finding that claimant's condition of ill-being after June 28, 2013, was attributable to a pre-existing degenerative condition, not the accidental fall. Additionally, the Commission concluded that the surveillance footage, taken with Dr. Miller's reports and other evidence in the record, demonstrated that claimant was not a surgical candidate or in need of additional medical treatment as a result of the work injury.

¶ 32     On July 14, 2014, claimant filed a petition for judicial review in the circuit court of Cook County. Following a hearing, the court determined that the Commission's finding, specifically that claimant's condition of ill-being was not causally related to the February 27, 2013, accident, was against the manifest weight of the evidence. Thus, the court reversed and remanded the Commission's decision.

¶ 33     On March 11, 2015, Proviso filed a timely appeal to this court. On February 11, 2016, pursuant to Illinois Supreme Court Rule 23 (eff July 1, 2011), this court entered an order dismissing the appeal for lack of jurisdiction and remanding the matter to the Commission with directions "to review all the controverted and relevant facts and provide both a factual and legal basis for a finding of causation subsequent to June 28, 2013." See *Proviso Township High School District #209 v. Illinois Workers' Comp. Comm'n,* 2016 IL App (1st) 150716WC-U.

¶ 34     On December 20, 2018, the Commission, exercising *de novo* review of the arbitrator's decision, again, adopted the arbitrator's findings. The Commission expressed its belief that the

11

Commission's prior panel "neither misrepresented nor misinterpreted Dr. Miller's findings and/or conclusions" and "performed the function to which it is tasked and weighed the competing evidence." The Commission, however, acknowledging that it was bound by the circuit court's decision and findings, entered a decision reversing the arbitrator's decision. Accordingly, the Commission found that claimant's condition of ill-being after June 28, 2013, was causally related to the February 27, 2013, accident and awarded additional benefits, including TTD benefits through August 12, 2013. On January 10, 2019, the Commission vacated its December 20, 2018, decision and entered a corrected decision.

¶ 35    On January 11, 2019, Proviso filed a petition for judicial review in the circuit court of Cook County. The court later confirmed the Commission's decision on remand, and Proviso filed a timely notice of appeal.

¶ 36                                    II. Analysis

¶ 37    It is undisputed that claimant sustained accidental injuries from a fall arising out of and in the course of her employment. The sole issue on appeal arises from the Commission's original decision to deny benefits after June 28, 2013. Specifically, the Commission's finding that claimant failed to prove that her condition of ill-being regarding her left knee was causally related to her work accident after June 28, 2013, which was the date Dr. Miller determined claimant's injuries from the accident had resolved and she could return to full employment. Upon concluding that the Commission's decision was against the manifest weight of the evidence, the circuit court set aside that decision. Accordingly, on appeal, Proviso asserts that the circuit court erred in setting aside the Commission's original decision. We agree.

¶ 38    An appeal from a final judgment of the circuit court confirming a decision of the Commission on remand necessarily implicates the propriety of the circuit court's earlier decision.

12

See *F&B Manufacturing Co. v. Industrial Comm'n*, 325 Ill. App. 3d 527, 531 (2001). Where, as here, the trial court reverses the Commission's initial decision and the Commission enters a new decision on remand, this court must decide whether the Commission's initial decision was proper. *Vogel v. Illinois Workers' Comp. Comm'n,* 354 Ill. App. 3d 780, 785-86 (2005).

¶ 39   This appeal involves a challenge to the Commission's original findings with respect to causation and to dependent prospective medical care and TTD benefits. All three inquiries present questions of fact. See *ABF Freight System v. Illinois Workers' Comp. Comm'n*, 2015 IL App (1st) 141306WC, ¶ 19 ("Causation presents a question of fact."); *Dye v. Illinois Workers' Comp. Comm'n*, 2012 IL App (3d) 110907WC, ¶ 10 ("Questions regarding entitlement to prospective medical care *** are factual inquiries for the Commission to resolve."); *Ming Auto/Ming of Decatur, Inc. v. Industrial Comm'n*, 387 Ill. App. 3d 244, 256-57 (2008) (noting that entitlement to TTD is a question of fact for the Commission); see also *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 542 (2007) ("A claimant is entitled to TTD benefits from the time an injury incapacitates him from work until such time as he is as far recovered or restored as the permanent character of his injuries will permit."). The Commission's determination on a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987).

¶ 40   "[T]o the extent that the medical testimony might be construed as conflicting, it is well established that resolution of such conflicts falls within the province of the Commission, and its findings will not be reversed unless contrary to the manifest weight of the evidence." *Caterpillar Tractor Co. v. Industrial Comm'n*, 92 Ill. 2d 30, 37 (1982). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992). Presented differently, the

13

Commission's determination on a question of fact is against the manifest weight of the evidence when no rational trier of fact could have agreed. *Dolce v. Industrial Comm'n*, 286 Ill. App. 3d 117, 120 (1996). With these principles in mind, we now turn to the merits of this appeal and first consider the propriety of the Commission's original decision.

¶ 41    Proviso contends that the Commission's original determination that claimant's condition of ill-being was not causally connected to her work accident was supported by the manifest weight of the evidence. In response, claimant asserts that the Commission's original panel "cherry picked certain portions of Dr. Miller's various IME reports" and "completely disregarded all the various doctors' reports indicating casual connection with the work accident." Thus, in turn, claimant urges us to affirm the circuit court's order confirming the Commission's corrected decision issued on remand.

¶ 42    In the present case, the crux of the dispute centers on whether claimant's left knee injury, that is, a torn meniscus or a peroneal nerve contusion to her left leg, had sufficiently resolved itself by June 28, 2013. More precisely, the issue is whether the record supports the Commission's original determination that the claimant failed to prove by a preponderance of the evidence that her condition of ill-being after June 28, 2013, was causally related to the work accident. Upon careful review of the record, we cannot say that the Commission's finding that the claimant failed to meet her evidentiary burden in that regard is unreasonable and unsupported by the evidence.

¶ 43    In rendering its decision, the Commission relied heavily on Dr. Miller's reports and surveillance footage. The record shows that Dr. Miller reviewed the pertinent medical records, including Dr. Jones' (the first treating physician) reports and MRI results. Dr. Miller also obtained an independent history from claimant and conducted a physical examination before rendering his opinions. Although Dr. Miller noted that the mechanism of injury was a competent cause of her

14

complaints, he believed that claimant's complaints were unsupported by the MRI results, which were consistent with some mild degenerative changes. Additionally, based on his independent review of the MRI and claimant's physical examination, Dr. Miller disagreed with the radiologist's opinion that the MRI showed evidence of a torn meniscus. Instead, given the absence of effusion combined with diffuse and nonfocal tenderness, Dr. Miller diagnosed claimant with a peroneal nerve contusion.

¶ 44    At Proviso's request, Dr. Miller issued an addendum to his original report on May 2, 2013, in which he concluded that claimant could return to work as a full-time teacher. On June 28, 2013, after reviewing the surveillance footage, Dr. Miller issued a second addendum, in which he reiterated his April 1, 2013, findings that claimant had significantly more symptoms than he could substantiate on the minimally abnormal examination, and he asserted that the surveillance footage revealed no evidence to support a finding of a physical disability in claimant's left leg. Dr. Miller also commented that "[t]his video suggests that whatever symptoms she may or may not have had at the time of my examination have resolved. In my opinion, based upon this video no further treatment is necessary ***." Lastly, on July 23, 2013, Dr. Miller issued his final addendum to his April 1, 2013, report where he concluded "to a reasonable degree of medical certainty, if there is a torn cartilage, I cannot relate it to the incident in question."

¶ 45    In contrast to Dr. Miller's opinions with respect to injury and causal connection, Dr. Tonino stated in his April 15, 2013, report that "[i]t sounds like she contused her left leg," but "[h]er MRI shows the possibility of a medial meniscus tear of the left knee and some chondromalacia of her left knee." Moreover, upon examining claimant, Dr. Tonino diagnosed a left knee contusion and left shoulder injury. Later, on June 20, 2013, after claimant returned to Dr. Tonino complaining of knee locking and ongoing pain and problems, Dr. Tonino suggested an arthroscopic evaluation of

15

the knee with partial medial meniscectomy. The Commission gave less weight to Dr. Tonino's opinion, as correctly observed by the Commission's second panel, because his opinions were largely based on claimant's subjective complaints.

¶ 46    Lastly, contrary to the circuit court's finding that the video "is not really evidence of anything," the surveillance videos show claimant carrying items and repeatedly traversing a flight of stairs with no outward signs of pain or discomfort more than one month prior to claimant presenting to her physical therapists and Dr. Tonino with complaints of knee locking. Therefore, the videos could reasonably be viewed as corroborating Dr. Miller's opinions that the subjective complaints could not be reconciled with the objective evidence, claimant was physically able to return to work, and that no lingering symptoms were noticeable. Accordingly, the Commission's decision is amply supported, and the opposite conclusion is not clearly apparent from the record.

¶ 47    Based on the foregoing, the Commission's original decision to deny claimant benefits after June 28, 2013, as unrelated to the work accident is not against the manifest weight of the evidence. Therefore, the circuit court erred in setting aside the Commission's original decision on that issue.

¶ 48                                   III. Conclusion

¶ 49    Based on the foregoing, we reverse the circuit court's original order, vacate the Commission's corrected decision on remand, vacate the circuit court's order confirming the Commission's corrected decision, and reinstate the Commission's original decision.

¶ 50    Reversed in part and vacated in part; Commission's decision on remand vacated and original decision reinstated.